United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL MAGUIRE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF AMERICAN CANYON ET AL.,<br><br>　　　　Defendants.<br>_____/ | No. C-06-5681 JCS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　　Plaintiff, Paul Maguire, has sued the City of American Canyon and its Director of Public Works, in his official capacity, challenging the constitutionality of a city ordinance that was enacted by the city council on August 17, 2006, limiting the posting of political campaign signs. On February 14, 2007, the Court conducted a non-jury trial in the above matter. Pursuant to Federal Rule of Civil Procedure 52(a), the Court hereby makes the following findings of fact and conclusions of law.

**I.　　FINDINGS OF FACT**

　　　　**A.　　Factual Background**

　　　　1.　　Paul Maguire ("Maguire") is a resident and registered voter in the City of American Canyon, Napa County, California.

　　　　2.　　The City of American Canyon ("the City" or "American Canyon") is a municipal corporation of the State of California, located in Napa County, California.

　　　　3.　　Maguire ran for the American Canyon city council in 2004 and for Mayor of American Canyon in 2006. Maguire filed his nomination papers for the office of Mayor of American Canyon on August 11, 2006, 88 days prior to the November 7, 2006 election.

4. On August 17, 2006, the City adopted Ordinance 2006-04. Ordinance 2006-004 added to the City Code a section entitled "Regulation of Political Signs" (City Code Section 19.23.035), which provided as follows:

> In addition to those signs exempt from regulation pursuant to City Code section 19.23.030, political signs as defined by City Code section 19.23.120 shall also be exempted subject to compliance with all of the rules and all of the regulations set forth in subsection (A) herein.
>
> A. Regulations. The placement or installation of political signs in the City of American Canyon shall in all respects comply with the following:
>
> (1) No political signs shall be installed or displayed sooner than ninety (90) days preceding the election for which the sign is intended;
> (2) No political sign shall be lighted either directly or indirectly;
> (3) No political sign shall be placed on private property, vacant or otherwise, without the permission of the owner of said property;
> (4) No political sign shall be posted on any public property or in the public right-of-way;
> (5) No political sign shall be posted in violation of any other provisions of the Municipal Code;
> (6) All political signs shall be removed within ten (10) days and recycled by the Department of Public Works after the date of the election except that a sign on behalf of a candidate who is successful in a primary election may be retained for the general election. Removal of political signs shall be responsibility of the property owner;
> (7) The Director of Public Works and the Chief of Police shall have the right to remove all signs which obstruct visibility on City streets or could contribute to a dangerous condition of public property;
> (8) The Director of Public Works shall have the right to remove all signs placed contrary to any provisions of this section;
> (9) The City Council shall from time to time establish procedures by resolution providing for forfeitable deposits by candidates posting political signs within the City of American Canyon.
>
> B. Unauthorized Removal of Political Signs. No person shall remove, destroy, relocate, or otherwise disturb any political sign without the permission of the party who erected the sign. It shall be presumed, as to signs for political candidates, that the political candidate or his or her representative is the party who erected the sign. It shall further be assumed that the committee who has registered with the Secretary of State to support a position on a ballot proposition is the party who erected the sign taking the position on a ballot measure. Nothing in this subsection shall prohibit the owner of real property, or his or her authorized representative, from removing a sign from his or her property when the political sign has been erected without his or her consent; and provided further, nothing in this subsection shall prevent the Director of Public Works or his authorized representatives from

taking action to abate sign violations pertaining to political signs pursuant to section 19.23.090 of this chapter.[1]

Ordinance 2006-004 also repealed the provision that previously had governed political campaign signs, City Code Section 19.23.030(O). That provision stated as follows:

> The following signs shall be exempt from regulation under this chapter:
>
> (O)  Signs pertaining to an election in which a candidate or ballot measure will be voted on and not exceeding a total sign area of thirty-two square feet in sign area. Such signs shall not be displayed earlier than ninety days prior to the election and shall be removed within ten days thereafter, except that a sign on behalf of a candidate who is successful in a primary election may be retained for the general election. No such sign shall be a roof sign. Removal of political signs shall be the responsibility of the property owner.

Finally, Ordinance 2006-004 amended City Code Section 19.23.120, containing definitions for the chapter, to add definitions for the terms "Political Signs" and "Public Right of Way." "Political Signs" is defined as "a sign erected prior to an election to advise or identify a candidate, campaign issue, election proposition, or other related matter." "Public Right of Way" is defined as follows:

> [A]ny area of real property dedicated to or owned in fee by the City or the public or any other public body, or over which the City or the public or any other public body holds an easement for public street, alley, sidewalk, pedestrian, equestrian, or public utility purposes which is within the City boundaries excluding areas of real property which are on, or adjacent to, the side or rear yard of any parcel or any area within the curtilage of any parcel.

5.  On September 5, 2006, the City passed an Urgency Ordinance that states that "questions have arisen as to whether the Director of Public Works and Chief of Police are the

---

[1] City Code Section 19.23.090 provides, in relevant part, as follows:

B.  The planning director shall remove or cause the removal of any sign constructed, altered or maintained in violation of this chapter.

1.  Such removal may occur fifteen days after the date of mailing of registered or certified written notice to the owner of the sign, if known, at the last known address or to the owner of the property as shown on the latest assessment roll, or to the occupant of the property at the property address. The notice shall describe the sign and specify the violation involved, and indicate that the sign will be removed if the violation is not corrected within fifteen days.

3

appropriate City individuals to enforce provisions regulating the placement and removal of political signs and it has determined that a more appropriate individual would be the City Manager and his or her designee." Accordingly, subsections A(7) and A(8) of City Code Section 19.23.035 were amended to replace the words "Director of Public Works and Chief of Police" (subsection A(7)) and "Director of Public Works" (subsection A(8)) with "the City Manager and his or her designee."

6. On September 8, 2006, a campaign sign that Maguire had posted at the intersection of Theresa Avenue and Eucalyptus Street in American Canyon was taken down by Public Works Superintendent Fred Simonson. Simonson removed the sign because he believed that it was a safety hazard. He did not contact Maguire prior to removing the sign because he could not find a contact number for Maguire but he left a message for Maguire a few days later, on September 11, 2006, at Maguire's office informing him that his sign had been removed and that it could be picked up at the City's corporation yard.

7. Maguire intends to run again for the office of Mayor of American Canyon, either in the scheduled 2008 election or in an earlier recall election to replace the current mayor. He would like to post temporary campaign signs prior to the 90-day period leading up to either election.[2] In addition, he would like to post some of his temporary campaign signs on Public property in specific locations from which the signs of another candidate, J.T. Miller, were removed in October 2006.[3]

---

[2] In support of this finding, the Court relies on the Declaration of Paul Maguire as Trial Testimony, ¶ 3. The City's objection to this portion of the Maguire Declaration as "argumentative, speculative and self-serving" is overruled. The evidence shows that Maguire has been active in American Canyon politics for years, including running for political office at least twice and posting signs in connection with those campaigns. In this context, the Court finds Maguire's representations about his future intentions to be credible.

[3] In support of this finding, the Court relies on the Declaration of J.T. Miller as trial testimony, and, in particular, Miller's representations that: 1) in the November 2006 election for the American Canyon City Council, he posted temporary political signs in specific identified locations that are on Public property; and 2) those signs were removed. The Court rejects the City's objection that the Miller Declaration is irrelevant because Miller is not a plaintiff in this case. Miller's experience is relevant because he has listed the specific locations at which Maguire also would like to post signs. Further, Miller has testified that these signs were removed and that he later recovered them at the City Corporation Yard – evidence that is relevant to the threat of enforcement if Maguire should post signs in those same locations. The Court also finds that Miller is competent to testify to these facts, of which he had direct personal knowledge. Finally, the Court notes that the City stipulated at trial that in the fall of 2006 the City, did, in fact, remove campaign signs that Miller had posted on public property.

1  Maguire himself posted campaign signs in many of these same locations prior to the 2004 election.
2  He refrained from posting signs in these locations in the period leading up to the November 2006
3  election, however, because of the prohibition on posting political campaign signs on Public property
4  contained in City Code Section 19.23.035.

5          8.     The City intends to remove political campaign signs that are posted prior to the 90-
6  day period leading up to future elections in American Canyon.[4]  Based on the City's removal of
7  Miller's campaign signs from Public property in the period leading up to the November 2006
8  election, the Court further finds that the City will likely enforce the prohibition on posting political
9  signs on Public property.

10        **B.**       **Procedural Background**

11         9.     On September 15, 2006, Maguire filed the complaint in this action, asserting claims
12 under 42 U.S.C. §§ 1983 and 1985.[5]  In his complaint, Maguire alleged that Ordinance 2006-04
13 violates his rights to free speech and association, equal protection, and due process under the First
14 and Fourteenth Amendments of the United States Constitution.  In addition to suing the City of
15 American Canyon, Maguire named as a defendant the Director of Public Works of the City of
16 American Canyon, who Maguire sued in his official capacity based on his authority to enforce the
17 challenged statute.  Maguire requested entry of declaratory judgment and a temporary restraining
18 order, preliminary injunction and/or permanent injunction prohibiting the City of American Canyon
19 from enforcing the challenged ordinance.

20        10.    On October 13, 2006, Maguire filed a Motion for Preliminary Injunction, noticed for
21 hearing on November 17, 2006.  Before that motion was heard, on October 27, 2006, Maguire filed a
22 declaration in support of the Motion for Preliminary Injunction in which he requested, for the first
23 time, a temporary restraining order.  In a telephonic hearing held on October 31, 2006, the Court
24 denied Maguire's request for a temporary restraining order.  In addition, the Court vacated the

---

[4] The City stipulated to this fact at trial.

[5] At trial, Plaintiff stipulated to the dismissal of his claim under 42 U.S.C.§ 1985. Accordingly, that claim is dismissed with prejudice.

1 November 17, 2006 hearing date on the Motion for Preliminary Injunction and scheduled a trial on
2 the merits, to be held February 14, 2007.[6]

3       11.    Maguire challenges Ordinance 2006-04 on three grounds: 1) the 90-day durational
4 limitation that applies to all political signs, found in City Code Section 19.23.035(A)(1),
5 impermissibly infringes his First Amendment right to free speech; 2) the right of the Public Works
6 Director to remove political signs that violate "any provision" of § 19.23.035 without any notice
7 requirement violates his right to Due Process; 3) the ordinance violates the Equal Protection clause
8 of the Fourteenth Amendment because it treats commercial speech more favorably than political
9 speech, in particular, by banning political campaign signs from Public property but allowing other
10 types of signs, such as special events signs, to be posted on such property under some circumstances.
11 Maguire seeks a declaration by the Court that Ordinance 2006-004 is unconstitutional for the
12 reasons stated above and a permanent injunction enjoining the City from enforcing the ordinance.
13 He also requests an award of costs, including reasonable attorneys' fees.

14     At trial, the parties stipulated that the City Manager, in his official capacity, should be
15 substituted for the Public Works Director in light of the September 5, 2006 Urgency Ordinance
16 shifting the authority to remove political signs under Section 19.23.035 from the Public Works
17 Director to the City Manager.[7]

---

[6] Because the Court addresses Plaintiff's claims on the merits, the request for entry of a preliminary injunction is now moot. Accordingly, Plaintiff's October 13, 2006 motion is denied on that basis.

[7] In its opening trial brief, the City argued that the Director of Public Works was entitled to qualified immunity and therefore, that the claims against him should be dismissed. The City also argued that the Director of Public Works should be dismissed because he is no longer the official responsible for removing political signs under the sign ordinance. Now that the City Manager has been substituted for the Director of Public Works, the second argument is moot. The first argument fails – assuming the City wants to assert it on behalf of the City Manager – because the doctrine of qualified immunity does not apply to actions that seek prospective relief only. *See San Francisco Democratic Central Committee v. Eu*, 826 F.2d 814, 825 (9th Cir. 1987) ("[i]t is settled law . . . that the Eleventh Amendment does not bar an action seeking prospective relief from enforcement of an unconstitutional statute"). The City implicitly concedes this point by dropping this argument in its reply trial brief.

6

## II. CONCLUSIONS OF LAW

### A. Standing, Mootness and Ripeness

12. The City advances three, closely related arguments in support of its position that Maguire does not have standing to challenge Ordinance 2006-004. First, the City asserts that Maguire does not have standing because Ordinance 2006-004 has never been enforced against him and therefore, he has not been harmed. In particular, the one sign that was removed, the City asserts, was removed for safety reasons and not because it violated the provisions Maguire challenges. Second, even if the sign had been removed because it violated one of the challenged provisions, the City contends, Maguire's case is moot because the election for which the sign was posted has already occurred. Finally, the City argues that to the extent Maguire's claims are based on threatened future injury, the claims are not yet ripe.

Under Article III of the Constitution, a plaintiff must demonstrate the existence of a "case or controversy" in order to have standing to assert an action in federal court. *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1992) (*en banc*) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To meet this requirement, plaintiffs must show "at an irreducible minimum that they personally have suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant . . . and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Id.* (quotations and citations omitted).

To demonstrate standing based on a "threatened" injury, a plaintiff "must show that the threat of future injury is both 'real and immediate.'" *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "Conjectural" or "hypothetical" injury is not sufficient to meet this requirement. *Id.* Nor is past illegal conduct sufficient if it is unaccompanied by any present adverse effects. *Id.* On the other hand, "[w]hen a plaintiff seeks to engage in conduct proscribed by statute and a credible threat of prosecution exists, he need not expose himself to actual arrest and prosecution to be entitled to challenge the statute." *San Francisco Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 821 (9th Cir. 1987) (citations omitted). The Supreme Court has emphasized that this principle applies with particular force in cases involving constitutionally protected expression.

7

*Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) ("Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights.")

The Ninth Circuit addressed the question of standing by a plaintiff challenging a city sign ordinance in *Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976). In *Baldwin*, the court addressed whether a property owner, resident and registered voter had standing to challenge an ordinance regulating temporary signs. 540 F.2d 1360 (9th Cir. 1976). The plaintiffs had sued the city a month prior to a general election, challenging the sign ordinance on constitutional grounds on the basis that it had prevented them from erecting signs of the size and in the locations they desired in support of a particular candidate for the City Council, Melvin Kerwin. *Id*. at 1364. The city argued that the plaintiffs did not have standing to bring the challenge because by the time of the trial, the election was over, Kerwin had lost, and he did not intend to run for office again. *Id*. The court rejected the city's position, however, finding that there was a controversy of sufficient immediacy and reality to justify issuance of a declaratory judgment:

> [The plaintiff] testified that he was engaged actively in politics in the Redwood City area for nearly 20 years. He has participated, and made use of political signs, in both partisan and nonpartisan elections, including elections for the Redwood City Council and the board of the Redwood City high school. He has supported candidates other than Melvin Kerwin indeed, has been a candidate himself. He testified that there would be future occasions in which he would want to use such political posters in a manner prohibited by the challenged provisions. The district court found that Redwood City Officials would continue to enforce the challenged provisions against [the plaintiff] or other persons wishing to erect political campaign posters in future municipal elections. Thus, the record established the [plaintiff's] continuing interest in local political campaigns involving the use of such signs and a continuing determination on the part of Redwood City officials to enforce the ordinance. On these facts, a future confrontation is likely; an immediate and real controversy exists.

*Id*. at 1365.

Here, the threat of enforcement is even more immediate than in *Baldwin*. Not only does Maguire have a history of involvement in American Canyon politics; he has declared his intention to run for Mayor in 2008, or even earlier. He would like to post signs on public property in locations he has identified – indeed, locations on which he posted political signs in past campaigns, prior to

8

the enactment of the new political sign ordinance – and he would like to do so more than 90 days before the election. Further, as discussed in the Court's findings of fact, the City intends to enforce City Code Section 19.23.035, including the prohibition on posting political signs on Public property and the 90-day limitation. Under these circumstances, there is a controversy of sufficient "immediacy and reality" to give Maguire standing to challenge Ordinance 2006-004.

The Court rejects the City's assertion that because the 2006 election has passed, Maguire's claims are moot. The City relies on *Golden v. Zwickler*, 394 U.S. 103 (1969), in which the Supreme Court held that a plaintiff's challenge to an ordinance prohibiting distribution of handbills was moot because the plaintiff's "sole concern" was distributing handbills relating to a particular candidate who subsequently was appointed to the state supreme court and therefore, was very unlikely to run for political office again. In *Baldwin*, the Ninth Circuit expressly rejected the defendant's reliance on *Golden v. Zwickler*, distinguishing the facts of that case on the basis that the plaintiff desired to engage in the proscribed conduct *only* as to a single candidate, in contrast to the plaintiffs in *Baldwin*, who continued to be actively engaged in politics. Similarly, in this action, the controversy is not moot because, in contrast to the facts in *Golden v. Zwickler*, it is very likely that Maguire will engage in conduct in the near future that will result in a confrontation with the City.

Next, the Court addresses whether Maguire's claims are ripe for adjudication. Even where a party has standing, a court may decline to adjudicate an issue if it concludes that the timing is not appropriate for judicial intervention. *Renne v. Geary*, 501 U.S. 312, 320 (1991). "When considering ripeness, we must determine whether the federal court is the most appropriate institution to address the plaintiffs' claims at this particular time." *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d at 510 (citations omitted). Courts consider two factors when determining whether a question is ripe for judicial intervention: "1) whether the issues are fit for judicial decision; and 2) whether the parties will suffer hardship if we decline to consider the issues." *Id*. With respect to the first factor, the court in *Am.-Arab Anti-Discrimination Comm. v. Thornburgh* noted that "[e]ven in the case of a pre-enforcement challenge . . . the exercise of jurisdiction without proper factual development is inappropriate." *Id*. at 511.

These principles are illustrated in the Supreme Court's decision in *Renne*, on which the City relies. In *Renne*, the plaintiffs challenged as unconstitutional a provision in the California constitution prohibiting political parties from endorsing candidates for nonpartisan office. 501 U.S. at 314. They particularly objected to the City Attorney's policy of deleting party endorsements from candidate statements in the government printed voter pamphlets. *Id*. at 315. In support of the claims, an affidavit by the chairman of the Republican Committee was submitted stating that "[i]t is the plan and intention of the Republican Committee to endorse candidates for nonpartisan office in as many future elections as possible." *Id*. at 317. The Court held that the issue was not ripe for review, explaining its conclusion as follows:

> Respondents do not allege an intention to endorse any particular candidate, nor that a candidate wants to include a party's or committee member's endorsement in a candidate statement. We possess no factual record of an actual or imminent application of [the statute] sufficient to present the constitutional issues in "clean-cut and concrete form." . . . We do not know the nature of the endorsement, how it would be publicized, or the precise language petitioners might delete from the voter pamphlet. To the extent respondents allege that a committee or committee member wishes to "support" or "oppose" a candidate other than through endorsements, they do not specify what form that support or opposition would take.

*Id*. at 321-322. The Court went on to conclude that deferring adjudication would not impose a "substantial hardship" on the plaintiffs because voters could learn of party endorsements through means other than the voter pamphlets and if the parties desired to include a particular endorsement in a voter pamphlet, the constitutionality of the City Attorney's refusal to include that endorsement could be litigated at that time "in the context of a concrete dispute." *Id*. at 323.

Here, the Court concludes that Maguire's challenges relating to the 90-day limitation and the public property prohibition are ripe, but that his challenge to the notice requirements is not. With respect to the former claims, *Renne* is not on point. In contrast to the facts in *Renne*, where the nature of the future conduct in which the plaintiffs intended to engage was ill-defined, Maguire has identified with some precision the conduct at issue: he desires to place signs on public property, at locations that he has identified, in support of his campaign for the 2008 election and he would like to do so *before* the 90-day period permitted under Ordinance 2006-004 begins. These issues are relatively straightforward, and the record is sufficiently developed to resolve them at this time.

1    In contrast, the record regarding the notice required for removal of signs under City Code
2 Section 19.23.035 is less clear.  On one hand, the plain language of City Code Section
3 19.23.035(A)(8), as amended by the September 5, 2006 Urgency Ordinance, appears to grant
4 summary authority to the City Manager to remove political signs that violate the political sign law.
5 That authority appears to be independent of the authority of the Director of Public Works found in
6 City Code Section 19.23.090 – which *does* contain a notice requirement – and affirmed in Section
7 19.23.035(B).  Were the City to interpret City Code Section 19.23.035 to allow such summary
8 removal, City Code Section 19.23.035 might well run awry of the requirements of due process.  *See*
9 *Baldwin*, 540 F.2d at 1373 (holding that provision that allowed summary removal of political signs
10 even when they were neither abandoned nor hazardous was unconstitutional).

11    On the other hand, the City takes the position that it is required, under the current statutory
12 framework, to notify those who post political signs of its intent to remove non-compliant political
13 signs *prior* to removing those signs.  Further, there is scant evidence in the record regarding the
14 City's actual practice with respect to notice under City Code Section 19.23.035.  Maguire's sign was
15 removed by the Director of Public Works because it was seen as a safety hazard, not because it
16 violated either the 90-day limitation or the prohibition against posting political signs on Public
17 property.  Thus, the lack of prior notice as to that sign sheds little light on what sort of notice might
18 be provided regarding removal of political signs for violation of those provisions.  Further, there is
19 little evidence in the record regarding the circumstances under which Miller's signs were removed or
20 the efforts, if any, the City made to contact Miller prior to their removal.

21    Given that the record is poorly developed as to what notice, if any, the City has given in the
22 past or will give in the future, prior to removal of political signs under City Code Section 19.23.035,
23 the Court concludes that it is premature to address Maguire's due process challenge.  The Court
24 further finds that deferring resolution of this issue will not impose a substantial burden on Maguire
25 because, as discussed below, enforcement of the two substantive provisions challenged by Maguire
26 will be enjoined.

27    Accordingly, the Court addresses below the constitutionality of the 90-day limitation and the
28 Public property prohibition in City Code Section19.23. 035.

11

### C. The 90-day Limitation

13. Maguire argues that the 90-day limitation found in City Code Section 19.23.035(A)(1) violates the First Amendment, relying primarily on a decision by Judge Schwarzer of this Court, *City of Antioch v. Candidates' Outdoor Graphic Serv.* ("*City of Antioch*"), 557 F. Supp. 52 (N.D. Cal. 1982). The reasoning in that case is set forth here in some detail as it is particularly pertinent to the issues currently before the Court. In *City of Antioch*, a local ordinance limiting the posting of campaign signs to 60 days before the election was challenged by an individual who lived in the city and wished to post signs outside of that period and by an organization that prints and posts political signs. *Id*. at 53 n. 1. Like Maguire, the plaintiffs in that case sought a declaratory judgment that the law violated the First and Fourteenth Amendments and an injunction enjoining its enforcement. *Id*. at 54.

The court in *City of Antioch* began by addressing whether it should treat the ordinance as a law regulating "time, place and manner" of speech or rather, whether it should apply the more stringent test adopted by the Ninth Circuit in *Rosen v. Port of Portland*, 641 F.2d 1243 (9th Cir. 1981). Citing the Supreme Court's decision in *Linmark Assocs. v. Willingboro Township*, 431 U.S. 85 (1977) (holding that ordinance prohibiting posting of "For Sale" signs could not be considered a "time, place and manner" regulation because it allowed the posting of other types of signs), the court concluded that the 60-day limitation was not a "time, place and manner" restriction because it did not "attempt to determine whether and at what times the exercise of First Amendment rights [was] compatible or incompatible with the normal uses of a particular forum or place . . .[but rather] impose[d] a general ban on the posting of signs promoting the candidacy of certain individuals or advocating a certain viewpoint on an upcoming ballot proposition" throughout the city for all but two months a year. *Id*. at 56. Because the law "single[d] out political speech for special treatment," the court concluded that the standards set forth in *Rosen* were the appropriate ones to apply.

In *Rosen*, the Ninth Circuit addressed the constitutionality of an ordinance regulating the distribution of literature at the Portland Airport. 641 F.2d 1243, 1244-1245 (9th Cir. 1981). Beginning with the premise that any law that regulates or infringes the exercise of First Amendment

12

1   rights "'must survive the most exacting scrutiny,'" *id*. at 1246 (quoting *Buckley v. Valeo*, 424 U.S. 1,

2   64 (1976)), the court laid out the general principles to be applied in analyzing such statutes:

> First, the law is presumptively unconstitutional and the state bears the burden of justification. . . . Second, the law must bear a substantial relation . . . to a weighty governmental interest. . . . The law cannot be justified by a showing of some legitimate governmental interest. . . . Third, the law must be the least drastic means of protecting the governmental interest involved; its restrictions may be no greater than necessary or essential to the protection of the governmental interest.

*Id*. at 1246 (citations and quotations omitted).

Having concluded that the more stringent standards set forth in *Rosen* applied, the court in *City of Antioch* proceeded to address the plaintiffs' specific claims, that is, that the challenged ordinance violated the Fourteenth Amendment's guarantee of equal protection and the First Amendment's guarantee of free speech. Regarding the equal protection challenge, the court looked to two Supreme Court cases that address the question of equal protection in the First Amendment context, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ("*Metromedia*") and *Police Dep't of the City of Chicago v. Mosely*, 408 U.S. 92 (1972).

In *Metromedia*, the Court addressed the constitutionality of an ordinance that permitted billboards that advertised goods or services offered on the property ("onsite billboards"), prohibited advertising of goods and services produced elsewhere and prohibited non-commercial advertising unless it fell under one of the ordinance's specified exceptions. 453 U.S. at 502. A plurality of the Court concluded that the ordinance violated equal protection because instead of affording noncommercial speech a greater degree of protection than commercial speech, as the Supreme Court's commercial speech cases instruct, the ordinance "effectively invert[ed] this judgment, by affording a greater degree of protection to commercial than to noncommercial speech." *Id*. at 513. The plurality explained, "[t]here is a broad exception for onsite commercial advertisements, but there is no similar exception for noncommercial speech." *Id*.

In *Police Dep't of the City of Chicago v. Mosely*, 408 U.S. 92 (1972) ("*Mosely*"), the Court addressed the constitutionality of a city ordinance that prohibited peaceful picketing within 150 feet of a school but made an exception for picketing of any school involved in a labor dispute. The Court held that the ordinance violated equal protection and the First Amendment. *Id*. at 96. The Court

13

1 explained:

> [U]nder the Equal Protection Clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. And it may not select which issues are worth discussing or debating in public facilities. There is an "equality of status in the field of ideas," and government must afford all points of view an equal opportunity to be heard. Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone.

*Id*. at 97. The Court went on to hold that while a regulation may satisfy First Amendment and equal protection requirements if it is narrowly tailored to further a substantial governmental interest, the challenged regulation did not meet those requirements. *Id*. at 101-102. The Court stated, "[f]ar from being tailored to a substantial governmental interest, the discrimination among pickets is based on the content of their expression. Therefore, under the Equal Protection Clause, it may not stand." *Id*. at 102.

Drawing on *Metromedia* and *Mosely*, the court in *City of Antioch* concluded that the 60-day limitation on political signs did not satisfy the requirements of the equal protection clause. The court explained:

> The Antioch political sign ordinance is content neutral in the sense that it does not discriminate among political messages. But it imposes severely restrictive time limits on the posting of political signs – limits not imposed, for example, on temporary signs advertising upcoming commercial, charitable or civic events. By singling out political signs for restrictive treatment, the Antioch ordinance clearly conflicts with the *Metromedia* plurality and the *Mosely* line of cases. Commercial speech, although subject to other limitations in the city's municipal sign ordinance, is merely regulated in Antioch; political speech is outlawed except during the sixty day period before an election.

557 F. Supp. at 58.

The court in *City of Antioch* rejected the city's reliance on *Lehman v. Shaker Heights*, 418 U.S. 298 (1974) – a case on which the City of American Canyon also relies. In *Lehman*, a political candidate sought declaratory judgment and injunctive relief when the city of Shaker Heights, pursuant to a long established policy, refused to allow him to purchase advertising space in the cars

14

of the city's rapid transit system. *Id*. at 300-302. The plaintiff argued that the refusal violated his right to equal protection and his First Amendment rights because commercial advertisements were permitted in the cars. *Id*. The Supreme Court disagreed, focusing on the fact that the streetcar audience is a "captive audience." *Id*. at 302. The court explained that the city is engaged in a "commercial venture": it "must provide rapid, convenient, pleasant and inexpensive service to the commuters of Shaker Heights." *Id*. As a result, the Court concluded, the situation was "different from traditional settings where First Amendment values unalterably prevail." *Id*. The court in *City of Antioch* concluded that because *Lehman* addressed a "'unique fact situation involving government created forums,'" 557 F. Supp. at 57-58 (quoting *Metromedia* plurality, 453 U.S. at 514 n. 19), it did not apply to the 60-day limitation that was being challenged in that case.

Turning to First Amendment principles, the Court in *City of Antioch* concluded that the 60-day limitation was not "the least drastic means of protecting its governmental interest" under the *Rosen* test. *Id*. at 58. The court did not dispute that the government's interest in "keep[ing] the community's streets, sidewalks, parks and business and residential districts attractive, clean and visually uncluttered" was a "legitimate" government objective. *Id*. at 59. Nonetheless, it concluded that banning temporary political signs for all but two months of the year "does not adequately accommodate [the city's] aesthetic and environmental goals to the public's right to be informed about upcoming elections." *Id*. The court explained,

> The temporary political sign offers special advantages to the candidate seeking public office and to the advocate promoting a particular position on a state ballot measure. These signs are a relatively inexpensive means of campaigning. Their use can be localized so that certain areas which the advocate wishes especially to reach may be targeted. A candidate or partisan can use the temporary sign to place a name or an issue before the public. In a campaign for political office, political posters can be effectively utilized to build up the candidate's name recognition and to establish him as a serious contender. The temporary political sign has special value to the non-incumbent or relatively unknown candidate who can use the signs to identify his name among the electorate. The less well-known candidate can test the waters to see whether his candidacy is viable before going to more expensive media such as television or radio.

*Id*.

1	The court in *City of Antioch* also pointed to two other decisions in which courts had found similar time limits to be unconstitutional: *Van v. Travel Info. Council*, 52 Or. App. 399 (1981) and *Orazio v. Town of Hempstead*, 426 F. Supp. 1144 (E.D.N.Y. 1977).  In *Van*, the plaintiff challenged the constitutionality of a statute that limited the posting of political campaign signs on land bordering state highways to 60 days before the election.  52 Or. App. at 411.  The court held that the provision violated the First Amendment, finding that the state's interest in aesthetics was not sufficient to justify the significant restriction imposed by the regulation.  *Id*. at 412.  The court noted, "[t]he process of acquainting the public with new candidates is a slow one.  Two months is simply not enough time to allow a relatively unknown person to achieve household name familiarity." *Id*. at 413.  Similarly, in *Orazio*, the court held unconstitutional a city ordinance that allowed political signs to be posted only six weeks before an election.  426 F. Supp. at 1149.  The court found the city's professed interest in aesthetics to be legitimate but concluded that the measure was not narrowly tailored to that objective because it discriminated based on content.  *Id*.  The court rejected the city's reliance on *Lehman*, concluding that that decision was limited to "the captive audience situation." *Id*.  Finally, the court went on to hold that "no time limit on the display of pre-election political signs is constitutionally permissible under the First Amendment." *Id*.  The court opined, "politics is an important business, and it is difficult to perceive what governmental interest is served by placing time limits on the public's opportunity to be informed about candidates who are seeking public office or organizations which support them." *Id*.

Finding the decisions in *Van* and *Orazio* to be persuasive, and based on the reasoning set forth above, the court in *City of Antioch* concluded that the 60-day limitation violated the First Amendment.  557 F. Supp. at 60.  It noted that not all measures to regulate temporary signs were necessarily unconstitutional and that some less drastic measures that might be permissible would be "institut[ing] clean up or removal requirements," "provid[ing] more stringent regulations for the areas of the City more in need of protection" and "regulat[ing] the size, design and construction of the posters." *Id*. at 61.  The court *did not* suggest that extension of the time to post political signs, for example, from 60 to 90 days before the election, would be a permissible alternative.

The City of American Canyon asserts that *City of Antioch* does not apply because the limitation at issue in this case is 90 days rather than 60 days. According to the City, this longer time period covers the entire period between the last date to register as a candidate and the election and therefore, adequately balances Maguire's First Amendment interests with the City's legitimate interest in aesthetics. The Court disagrees.

Having enacted an ordinance that bans political campaign signs outright for three quarters of the year, the City bears a heavy burden to demonstrate this limitation is consistent with the requirements of the First and Fourteenth Amendments. With respect to the equal protection concerns raised by the 90-day limitation, the Court finds that City has presented no evidence that justifies treating political campaign signs differently from other types of signs for all but 90 days prior to the election. Indeed, the fact that other types of signs are permitted year-round supports the conclusion that the ordinance is not narrowly tailored to the City's interest in aesthetics. Therefore, the Court concludes that here, as in *City of Antioch*, the City's durational requirement violates the equal protection clause of the Fourteenth Amendment.

The Court also concludes that the slightly longer time period in this case is not enough to meet the City's burden of showing the ordinance represents an appropriate balance between the City's legitimate interest in aesthetics and the First Amendment right to freedom of speech. While the 90-day limit may be more reasonable than the 60-day limit in *City of Antioch*, the Court nonetheless concludes that the reasoning in *City of Antioch* is applicable here as well. The City has not demonstrated that it could not have addressed its aesthetic concerns with less drastic, content-neutral measures, such as the ones mentioned in *City of Antioch*. Nor has the City presented any evidence that political signs detract from the aesthetics of the City more than other signs that are permitted to stand for longer periods. *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (8th Cir. 1995) (striking down regulation limiting temporary political campaign signs to 30 days before the election and noting that a requirement that all signs be removed or replaced after 90 days would address the city's interest in aesthetics and likely pass constitutional muster because a candidate could simply remove a sign one day and install another the next day). Therefore, the Court concludes that the provision is not narrowly tailored to the City's interest in aesthetics.

17

1  The 90-day limit is unconstitutional.  Enforcement of the 90-day limit is enjoined.

2  **D.     Location of Political Signs**

3  14.     Maguire argues that City Code Section 19.23.035 violates the equal protection clause
4  because it bans the posting of temporary political signs on public property while allowing other
5  types of signs to be posted there, either under specific exemptions or by permit.  Maguire points to
6  several exemptions in City Code Section 19.23.030, which provides exemptions from regulation for
7  real estate signs,[8] directional signs directing prospective buyers to property that is for sale,[9] and
8  special event signs,[10] all of which, he asserts, may be posted on Public property so long as the
9  specific requirements in these provisions are met.  Maguire also points to City Code Section
10 19.23.040 (signs permitted by permit), which he asserts allows non-political signs to be placed on
11 Public property with a permit.  Finally, he has submitted pictures of signs that he says were posted in
12 American Canyon on Public property.[11]  *See* Trial Ex. 4.

13 The City argues that the exemptions for various non-political signs contained in City Code
14 Section 19.23.030 do not establish that these signs are treated more favorably than political signs
15 because these signs are themselves subject to many restrictions.  For example, real estate signs must
16 be unlighted and are limited to one per residential unit under City Code Section 12.23.030(M).
17 Similarly, the "location, size and height" of special event signs must be approved by the planning
18 director.  Further, according to the City, *none* of the exempted signs cited by Maguire may be posted

---

[8] City Code Section 19.23.030(M) exempts "[o]ne unlighted real estate sign per residential unit, not exceeding six square feet in sign area or five feet in height, that contains no commercial message."

[9] City Code Section 19.23.030(N) exempts "[d]irectional signs for directing prospective buyers to property offered for sale not exceeding four square feet in area and three feet in height.  Such signs shall be located outside of any public right-of-way and may be displayed for up to forty-eight hours."

[10] City Code Section 19.23.030(Q) exempts "[s]pecial event signs, including banners, and A or T frame signs for non-profit organizations.  The sign areas of special even building signs and freestanding signs shall not exceed more than half of the sign area allowed for similar permanent signs. Special even signs may be posted a maximum of four times per year per business or organization, and for no more than thirty consecutive days at a time.  The location, size and height of the special even sign requires the review and approval of the planning director for conformance to the city's sign ordinance prior to installation."

[11] Because the Court does not rely on these photographs, it does not reach the City's objections regarding their admissibility.

on public property *at all*. With respect to signs requiring permits, the City argues that these do not pose an equal protection problem because they may not be "freely" posted on public property. The City argues that the pictures of signs in American Canyon submitted by Maguire are inadmissible because Maguire has not laid a foundation as to what is depicted and when the photographs were taken.

To evaluate Maguire's equal protection argument, the Court looks to the exempted non-political signs contained in City Code Section 19.23.030. The Court notes at the outset that *none* of these exemptions contains an express prohibition on posting the enumerated signs on public property, in contrast to the blanket prohibition on posting of political signs on "any public property or in the public right-of-way" contained in City Code 19.23.035(A)(4). The only restriction that comes close applies to directional signs directing prospective buyers to property that is for sale, which may not be posted in the public "right-of-way." Even applying the broad definition of "public right of way" adopted in Ordinance 2006-004, the public right-of-way does not encompass all public property.

Further, while certain of the exempted signs arguably are the sort that could be posted *only* on private property – for example, "signs located within malls, courts, arcades, porches, patios, and similar areas" (Subsection E) – a number of the exempted signs could be posted on public property as well. For example, subsection A exempts "[a]ny sign erected and maintained pursuant to, and in discharge of any governmental function or required by any law, ordinance or governmental regulation." There is nothing inherent to such a sign that requires it be posted on private property. Similarly, there is nothing inherent to special events signs, real estate signs or directional signs, listed in subsections M, N and Q, that would make such a requirement implicit in these exemptions. Nor is the Court persuaded that the requirement under City Code Section 19.23.030(Q) that public events signs obtain approval of the planning director makes this exemption acceptable because the City has presented no evidence that public event signs have not been approved on public property.

In short, the Court finds nothing in the City's sign laws that supports its assertion that the exempted signs listed in City Code Section 19.23.030 may not be posted on public property. Nor has the City presented any evidence that it has ever prohibited the posting of these exempt signs on

public property. Given that the City has imposed a specific restriction based on content, it is the *City's* burden to show that this restriction is constitutional. It has not done so. Rather, the restriction placed on placement of temporary political on public property – which finds no counterpart elsewhere in the sign ordinance for non-political signs – flies in the face of the principles articulated in *Metromedia* and the many cases that have applied those principles, including *City of Antioch*. The Court concludes that the blanket prohibition on posting political campaign signs on public property violates equal protection because it discriminates against such signs relative to certain non-political signs that may be posted on public property, including real estate signs, directional signs and special events signs.

Because the Court concludes that the exempt signs listed above are sufficient to demonstrate an equal protection violation, it need not reach the question whether the permitted signs listed in the table contained in City Code Section 19.23.040 also give rise to an equal protection problem. The Court notes, however, that nothing in that section expressly precludes issuance of permits to post non-political signs on public property. Nor has the City presented any evidence that permits have not been or may not be issued to post non-political signs on public property under City Code Section 19.23.040.

The prohibition on the posting of political signs on public property is unconstitutional. Enforcement of City Code Section 19.23.035(A)(4) is enjoined.

### III. CONCLUSION

For the reasons stated above, the Court concludes that City Code Sections 19.23.035(A)(1) and (4) are unconstitutional. Enforcement of these provisions is enjoined. However, this injunction is stayed for 180 days from the date of this Order to allow the City Council to address the constitutional defects in Ordinance 2006-004. The Court retains jurisdiction to review any changes adopted by the City Council for compliance with this Order and with the restrictions of the First and Fourteenth Amendments.

IT IS SO ORDERED.

Date: March 1, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge