UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL MAGUIRE,

    Plaintiffs,

v.

CITY OF AMERICAN CANYON, ET AL.,

    Defendants.
_____/

No. C-06-05681 JCS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO AMEND [Docket No. 51]**

## I. INTRODUCTION

On March 1, 2007, the Court issued its Findings of Fact and Conclusions of Law ("Findings") in this action, holding that American Canyon's City Code Sections 19.23.035(A)(1) and (4) are unconstitutional. Defendant now brings a Motion to Amend or Make Additional Findings of Fact Pursuant to FRCP 52(b); Motion to Amend or Alter Judgment Pursuant to FRCP 59(e); or Alternatively, Motion for New Trial Pursuant to FRCP 59(a) (the "Motion" or "Motion to Amend"). For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. THE MOTION TO AMEND[1]

In the Motion, American Canyon asks the Court to amend its Findings or alternatively, to grant a new trial, regarding the questions of ripeness and standing. In support of this request, the City asserts that the Court's Findings are not based on substantial evidence and further, that new

---

[1] Because the background of this action is set forth in detail in the Court's Finding of Facts, the Court provides here only an overview of the evidence and arguments that relate to the Motion to Amend.

1

evidence demonstrates the absence of ripeness and standing regarding the City's enforcement of the challenged ordinance (the "Ordinance"). In particular, the City challenges the Court's Findings Nos. 7 & 8 to the extent the Court concluded that: 1) the City has enforced the Ordinance in the past; and 2) the City intends to enforce the Ordinance in the future.

With respect to the first question, the City asserts that the Court's reliance on a declaration by another candidate, J.T. Miller, was erroneous because portions of the declaration should not have been admitted into evidence. Further, the City presents new evidence that it asserts shows that Miller's signs were not, in fact, removed from public property but instead were removed from private property or property owned by CALTRANS, which has a policy of removing immediately any signs posted on CALTRANS property. *See* Declaration of Director of Public Works Robert Weil in Support of Motion to Amend or Make Additional Findings and to Amend and/or Alter Judgment, or, in the Alternative, Motion for New Trial ("Weil Decl.") at 2; Declaration of Sandra Cleisz in Support of Motion of City of American Canyon Notice of Motion and Motion to Amend or Make Additional Findings and to Amend and/or Alter Judgment, or, in the Alternative, Motion for New Trial ("Cleisz Decl.") at 2.

As to the second question – whether the City intends to enforce the ordinance in the future – the City argues that the Court erred because it improperly construed a statement by counsel at trial as a stipulation on the part of the City that it intended to enforce the ordinance.[2] The City also provides a statement by the City Attorney of American Canyon stating that the current City Council, which was elected after the Ordinance was enacted, has "not taken a formal position as to the enforcement of the Ordinance or whether there would be modifications prior to the next scheduled election." Declaration of William D. Ross in Support of the City of American Canyon Motion to

---

[2] At trial, the following exchange occurred between the Court and the City's counsel:

COURT: . . .are they going to enforce that law?

COUNSEL: I presume they would, your honor.

Trial Transcript (Bakshandeh Decl.) at 10.

2

1 Amend or Make Additional Findings and to Amend and/or Alter Judgment, or, in the Alternative,
2 Motion for New Trial ("Ross Decl.") at 2.

3 Finally, the City seeks to introduce evidence, in the form of a declaration by its Director of
4 Public Works, Robert Weil, that the City has never issued any permits to post non-political signs on
5 public property. *See* Weil Decl. at 2. The City argues that this evidence establishes that its
6 prohibition on posting political signs on public property does not violate equal protection.

7 In his Opposition, Maguire asserts that the Court should not consider the City's "new
8 evidence" because all of this evidence could have been discovered before trial with reasonable
9 diligence and no extraordinary circumstances justify considering such evidence. Opposition at 2.
10 Maguire points out that months before the trial, he stated in a declaration that he was reluctant to
11 post signs on public property because the City had removed campaign signs posted by candidate J.T.
12 Miller in certain locations. *Id*. at 5 (citing Supplemental Declaration of Dr. Paul Maguire, filed
13 October 27, 2007). Maguire also points to his own deposition testimony from November 30, 2006,
14 in which he stated on several occasions that Miller's campaign signs had been removed as part of the
15 City's enforcement efforts. *Id*. & Declaration of Arlo Smith, filed 4/13/07 ("Smith Decl."), Ex. A
16 (Transcript of Maguire Deposition). Even if the Court does consider the new evidence, Maguire
17 asserts, that evidence does not establish that the Court's factual findings regarding past enforcement
18 and the threat of future enforcement were erroneous.

19 In its Reply, the City argues that the Court should consider the new evidence because the
20 theories asserted in Maguire's case were a "moving target" until trial, shifting from an "as applied"
21 challenge to a facial challenge to the Ordinance. The City also asserts that at the October 2006 TRO
22 hearing, Maguire told the Court that the case would involve purely questions of law and on that
23 basis, the City agreed to an expedited trial schedule with limited discovery.

24 **III.    ANALYSIS**

25     **A.    Legal Standard**

26 Rule 52(b) of the Federal Rules of Civil Procedure provides that in cases tried without a jury,
27 "the court may amend its findings – or make additional findings – and may amend the judgment
28 accordingly." Similarly, Rule 59 allows the court, in an action tried without a jury, to grant a new

3

trial and to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct entry of a new judgment." Motions under both Rule 52(b) and Rule 59 are granted in order to correct manifest errors of law or fact or to address newly discovered evidence.[3] *See Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978) ("[t]here are three grounds for granting new trials in court-tried actions under Rule 59(a)(2): (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence"); *Town House Dep't Stores, Inc. v. Ahn*, 2003 WL 881004 (Guam Ter. March 7, 2003) ("a motion to amend under Rule 52(b) is intended "to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence") (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)).

Where a party seeks a new trial or to alter findings and/or the judgment on the basis of newly discovered evidence, it must demonstrate that the evidence "was discovered after the judgment, that the evidence could not [have been] discovered earlier through due diligence, and the newly discovered evidence is of such a magnitude that had the court known of it earlier, the outcome would likely have been different." *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003).

### B. Whether the Court Should Consider New Evidence

Maguire argues strenuously that the Court should not consider the new evidence presented by the City in support of the Motion. His position has some force. It has been clear from the outset of this case that Maguire's standing would be an important legal issue in the case, with the City asserting lack of standing as an affirmative defense in its answer. Similarly, Maguire made clear in his deposition that a significant reason why he feared future enforcement of the challenged ordinance was his understanding that the City had removed J.T. Miller's campaign signs pursuant to that Ordinance. Notwithstanding the significance of the standing question, and specifically, the City's past enforcement practices as to J.T. Miller, the City failed to present *any* evidence at trial

---

[3] Although not at issue in this case, courts may also grant a motion under Rule 59(e) where there has been an intervening change in the law. *See McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

4

regarding its enforcement of the ban on posting political campaign signs on public property. Instead, it only challenged the admissibility of the Miller Declaration.

Now, the City has discovered potentially significant facts that go to the standing and ripeness questions (and possibly to the merits as well) – facts that will likely change the outcome of this case. The question before the Court, then, is whether this evidence could not have been discovered through due diligence. In addressing this question, the Court is persuaded that it is appropriate to take into account the unusual history of this case. In particular, the Court and the parties believed, in good faith, that the Court's determination would be almost entirely legal and that little factual development would be required.[4] The Court, therefore, established an expedited schedule that allowed for only limited discovery. At trial, it became clear, that certain important factual issues had not been adequately developed.

Although a close call, the Court concludes that under the circumstances of this case – and in light of the important constitutional issues at stake – the City acted with sufficient diligence to justify allowing it to present the new evidence submitted with its Motion.

### C. Standing

In its Findings, the Court concluded that Maguire had standing to challenge the Ordinance because he had demonstrated a threatened future injury by showing that there was a credible threat of prosecution, both as to the 90-day limitation and the ban on posting campaign signs on public property. Findings at 8-9. In particular, the Court stated as follows:

> Here, the threat of enforcement is even more immediate than in *Baldwin*. Not only does Maguire have a history of involvement in American Canyon politics; he has declared his intention to run for Mayor in 2008, or even earlier. He would like to post signs on public property in locations he has identified – indeed, locations on which he posted political signs in past campaigns, prior to the enactment of the new political sign ordinance – and he would like to do so more than 90 days before the election. Further, as discussed in the Court's findings of fact, the City intends to enforce City Code Section 19.23.035, including the prohibition on posting political signs on Public property and the 90-day limitation. Under these circumstances, there is a controversy of sufficient "immediacy and reality" to give Maguire standing to challenge Ordinance 2006-004.

---

[4] *See* TRO Transcript at 24-25.

5

*Id*. The Court's conclusion that the City "intends to enforce" the Ordinance was based on two findings of fact: 1) that the signs of another candidate, J.T. Miller, had been removed from public property in a previous election subsequent to the enactment of the Ordinance; and 2) that the City stipulated at trial that it intended to enforce the Ordinance. *See id*. at 4-5. The City challenges both findings as well as the Court's legal conclusion regarding the existence of a credible threat of enforcement sufficient to support standing. It also offers a declaration by City Attorney William D. Ross stating that the City Council has not decided whether it will enforce the Ordinance. Having carefully considered the City's arguments and new evidence, the Court concludes that its finding that Maguire has standing based on threat of future enforcement is supported by the facts and the law.

### 1. Factual Finding that Ordinance was Enforced Against J.T. Miller

The City asserts that Factual Finding Nos. 7 (which states that Miller's campaign signs were removed from public property in October 2006) and 8 (which finds, based on the past removal of Miller's campaign signs, that the City intends to enforce the Ordinance's ban on posting political signs on public property in the future), should be amended because the main evidence on which the Court relied, namely, the Miller Declaration, was inadmissible and in the absence of that evidence, there was not substantial evidence supporting the Court's finding. Further, the City presents new evidence that it says establishes the Ordinance was never enforced against Miller. The Court rejects both arguments.

#### a. Evidence Introduced at Trial

In finding that American Canyon had enforced the public property ban under the Ordinance, the Court relied, in part, on a declaration by another candidate, J.T. Miller. In his declaration, J.T. Miller stated that "[i]n connection with the November 2006 election the City of American Canyon adopted the challenged sign ordinance and enforced it to remove many of my signs." Declaration of J.T. Miller as Trial Testimonay ("Miller Decl."), ¶ 5. Miller went on to identify specific locations from which signs were removed. He then provided the facts that formed the basis for his conclusion that the signs had been removed by the City pursuant to the Ordinance, stating as follows:

6

> The removal of these signs was not preceded or accompanied by any notification of any kind from the City, except in one case: On October 16, 2006, city employee Frederic Simmons [sic] left me a phone message requesting I remove the signs my campaign had posted on Danrose, and threatening removal of the signs if I did not comply with said request. Said phone message was followed up by an email to me. Trial Exhibit 3 [is] a true and correct copy of said email. The Danrose signs were in fact subsequently removed without my consent. That the City was responsible for removal of the signs from most, if not all of the signs described in this paragraph is supported by the fact that, subsequent to said sign removals, I was able to remove a large number of my signs from the City Corporation yard. In connection with my campaign for City Council in the June 2006 primary, I had been advised by City Clerk Kay Woodson that all campaign signs confiscated by the City are taken to the City Corporation yard.

*Id*.

The City objected at trial to the Miller Declaration, asserting that the entire declaration was irrelevant to the case because Miller himself was not a candidate. *See* Defendant's Objections to Plaintiff's Evidence at 1. The City also asserted that the paragraph quoted above was inadmissible because it was "conclusory, speculative, and lacks foundation." *Id*. at 2. The Court disagreed, stating in its Findings as follows:

> The Court rejects the City's objection that the Miller Declaration is irrelevant because Miller is not a plaintiff in this case. Miller's experience is relevant because he has listed the specific locations at which Maguire also would like to post signs. Further, Miller has testified that these signs were removed and that he later recovered them at the City Corporation Yard – evidence that is relevant to the threat of enforcement if Maguire should post signs in those same locations. The Court also finds that Miller is competent to testify to these facts, of which he had direct personal knowledge. Finally, the Court notes that the City stipulated at trial that in the fall of 2006 the City, did, in fact, remove campaign signs that Miller had posted on public property.

Findings at 4 n. 3.

Revisiting its prior ruling regarding the Miller Declaration, the Court concludes that its evidentiary ruling was correct as it relates to the question of standing. First, it is clear that any enforcement of the Ordinance against Miller was relevant to the question of whether there was a credible threat of enforcement against Maguire. Second, the City's objection that the declaration was speculative, conclusory and lacking foundation fails because the Court relied on the Miller Declaration in support of Finding of Fact No. 7 *only* for the proposition that the City had enforced

the Ordinance against Miller. With respect to that specific question, Miller's declaration provides specific statements, based on personal knowledge and supported by the Simonson e-mail, showing that at least *some* of the signs were removed by the City because they were on the City's public right-of-way, in violation of the Ordinance. In particular, Miller states that he posted campaign signs in particular locations on Danrose, that Frederic Simonson (the City's Superintendant of Public Works) called him and threatened to remove the Danrose signs, that he received a follow-up e-mail with respect to those signs stating that the signs needed to be removed because they were on the City's right-of-way and expressly referencing the challenged Ordinance, that the signs were subsequently removed, and that he retrieved many of his campaign signs from the City Corporation Yard. Therefore, the Court concludes that it properly considered the Miller Declaration in finding that the City had enforced the Ordinance against Miller.

Further, the Court concludes that its finding relating to past enforcement was supported by substantial evidence for two additional reasons. First, the City conceded at trial that the City had enforced the Ordinance against Mr. Miller. In particular, the following exchange occurred:

> COURT: . . . did the City take down Mr. Miller's signs that were posted on public property?
>
> COUNSEL: They took down one sign. Mr. Miller's signs, excuse me.
>
> COURT: Yeah, Miller.
>
> COUNSEL: I believe so.

Trial Transcript at 11. The City has not retracted this factual representation to the Court, which is not mentioned in the recently submitted declaration of trial counsel.

Second, the e-mail referenced by Miller in his declaration, which was sent to Miller by American Canyon's Public Works Superintendent Frederic Simonson on October 16, 2006, provides independent evidence that on at least one occasion, the City enforced the Ordinance with respect to Miller. *See* Trial Exhibit 3. That e-mail states as follows:

> Mr. Miller, this e-mail is a follow-up to the message I left on your phone this afternoon. You have several signs in the Right of Way under the PG & E transmission towers and along the watershed on Danrose. Please relocate the signs to appropriate locations not in the City's ROW. You may refer to the <u>Regulatory Placement and Removal of Political Signs</u>, Ordinance No. 2006-004 with sign

8

        placement guidelines.  Please feel free to contact me if you have any
questions.  Fred Simonson, Public Works Superintendent, (707) 647-
4368.

Trial Exhibit 3.  The City has not challenged the authenticity or admissibility of this exhibit.

        The Court concludes, therefore, that its finding that the Ordinance was enforced against Miller was supported by substantial evidence.

        **b.**    **New Evidence Regarding Enforcement Against Miller**

        Now, however, the City presents evidence that it asserts establishes that it *never* enforced the Ordinance as to Miller.  The City states: "the evidence that defendants now offer shows that the assertions made in the Miller Declaration are in fact untrue, and there is no record showing past enforcement of the challenged provisions of the Ordinance."  Motion at 9.  Rather, the City asserts, "the locations from which the Miller signs were removed were either private property or property owned by CALTRANS."  Having carefully reviewed the additional evidence, the Court concludes that the City's assertion is unfounded: while the City's evidence establishes that *some* of Miller's signs were posted on the CALTRANS right-of-way, it does not establish that *none* of Miller's signs were removed by the City from City property.  Most particularly, it does not address the signs referred to in the Simonson e-mail or offer any explanation of that e-mail.

        First, the City has provided a map showing the CALTRANS right-of-way and some of the Miller sign locations, but that map does not include the locations that Miller referred to as "Danrose & Wetlands Edge Road" or "Wetlands Edge Road."  *See* Weil Decl. & Ex. A (map).  In addition, it can be seen from the map that many of the locations in which Miller says he placed signs were not in the CALTRANs right-of-way.  Nor does Weil's map provide any basis for determining whether these remaining signs were posted on private or public property.

        Second, the City provides a declaration by the Fire Chief of American Canyon in which he states that "[s]ince the incorporation of the City in 1992, I have not observed the presence of political signs in the public right-of-way of the City or on City-owned lands as it directly impacts public safety through potential obscuring of lines of sight at intersections in the City."  Declaration of Keith Caldwell, Chief, American Canyon Fire Protection District, in Support of the City of American Canyon's Motion to Amend or Make Additional Findings and to Amend and/or Alter

1  Judgment, or, in the Alternative, Motion for New Trial ("Caldwell Decl.") at 2.  This statement does
2  not persuade the Court that the Ordinance was not enforced against Miller for two reasons.  First, the
3  statement is phrased in an ambiguous manner, leaving unclear whether Caldwell is stating that he
4  has *never* seen a political sign in the public right of way *or* if he has never seen a political sign in a
5  public right-of-way that obscures lines of sight.  Second, regardless how the phrase is interpreted,
6  the declaration provides no basis for concluding that the Fire Chief could be expected to have seen
7  *every* political sign ever posted in a right-of-way in American Canyon.  Indeed, the City does not
8  challenge the Court's finding that Maguire's own sign – which Caldwell apparently did not see –
9  was removed from a public right-of-way because it was a safety hazard.

10  The Court also finds Public Works Director Weil's declaration is insufficient to support the
11  City's assertion that the Ordinance wasn't enforced against Miller.  Weil states only that he has
12  reviewed the Department of Public Works files to determine if permits were issued to place non-
13  political signs on public property.  Weil Decl. at 2.  Weil apparently did not review the Public Works
14  Department files to determine whether the Ordinance at issue in this case had ever been enforced.

15  Another American Canyon employee, Sandra Cleisz, states that she reviewed the records of
16  the City Planning Department, including the City's "enforcement files," from and after January 1,
17  2006 for evidence of enforcement of the Ordinance against Miller.  On the basis of this review,
18  Cleisz states, "there is no record of removal of political signs of J.T. Miller from City right-of-way
19  and/or land owned by the City prior to the June 2006 primary election."  Cleisz Decl. at 2.  It is
20  striking that Cleisz limits her statement to the June 2006 primary election, given that the Court's
21  finding – as well as both Miller's Declaration and Simonson's e-mail – are based on removal of
22  Miller's signs prior to the *November* 2006 election.  Construed generously, the Cleisz Declaration
23  does not support the City's position.

24  In summary, none of the new evidence presented by the City persuades the Court that it erred
25  in finding, as a factual matter, that the City enforced the Ordinance as to Miller by removing at least
26  some of his signs from public property.

27
28

10

### 2. Factual Finding that the City Intends to Enforce the Ordinance

The City asserts that the Court misconstrued counsel's statement at trial that he "presumed" the City intended to enforce the Ordinance in the future and therefore, Finding of Fact No. 8 (which states that the City intends to remove political campaign signs that are posted prior to the 90-day period leading up to future elections in American) is erroneous. *See* Bakshandeh Decl. at 2 ("at no time did I intend to bind the City into a stipulation regarding its intentions to enforce any or all of the provisions of Ordinance 2006-004"). The City also points to new evidence, in the form of a declaration by the current City Attorney, that the present City Council, which is made up of members who were elected after the enactment of the Ordinance, "has authorized the defense of this litigation but has not taken a formal position as to enforcement of the Ordinance or whether there would be modifications prior to the next scheduled election." *See* Ross Decl. at 2.

Based on the Bakshandeh Declaration and the newly submitted declaration of the City Attorney, the Court concludes that Finding of Fact No. 8 should be amended to reflect that the City stated at trial that he presumes that the City intends to enforce the Ordinance. In addition, the City Council has authorized the defense of this litigation, but has taken no formal position as to the enforcement of the Ordinance or whether it may amend the Ordinance prior to the next election. Similarly, the City Attorney has expressed no opinion as to whether he intends to enforce the Ordinance in its current form.

### 3. Legal Conclusion That Maguire Has Standing

Having concluded that it is appropriate to amend the Court's factual findings in the manner described above, the Court comes to the question of whether this amendment changes its legal conclusion regarding standing. It does not.

The Court in this case found that Maguire has standing to pursue his claims because he has established "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a *credible threat* of prosecution thereunder . . . ." *Babbit v. United Farm Workers Nat'l*, 442 U.S. 289, 299 (1979) (citation omitted). The City does not challenge the Court's finding that Maguire intends to engage in conduct that may violate the Ordinance and which has potential implications under the First Amendment. Rather, it

asserts that Maguire has not demonstrated a credible threat of prosecution because the City Council has not "taken a formal position" as to enforcement and it might even decide to enact modifications to the Ordinance. The City Attorney himself is silent, in his declaration, regarding his own intention to prosecute violations of the Ordinance in its current form. The Court concludes that the City overstates the burden Maguire must meet to show a credible threat of prosecution.

In *Babbit*, the Court explained that a plaintiff who wishes to engage in conduct that is proscribed by statute and has a Constitutional dimension is not required to wait until he is prosecuted to seek legal redress. *Id.* "That one should not have to risk prosecution to challenge a statute is especially true in First Amendment cases, '[f]or free expression – of transcendant value to all society, and not merely to those exercising their rights – might be the loser.'" *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146,1155 (9th Cir. 2000) ("when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing"). On the other hand, *Babbit* also made clear that this principle does not apply where the plaintiff has "no fears of state prosecution except those that are *imaginary or speculative*." *Id.* (citation omitted) (emphasis added).

In distinguishing between a "credible threat" and a fear that is "imaginary and speculative," courts have made clear that "enforcement history alone is not dispositive." *LSO,* 205 F.3d at 1155. Thus, past enforcement, while significant, is not required to establish a credible threat of future prosecution. *Id.* Conversely, even where there *has* been past enforcement, there may not be a credible threat of future prosecution where there is affirmative evidence that the government does not intend to prosecute. *Id.* For example, where the government expressly disavows any intent to prosecute, courts have found that the likelihood of prosecution is too speculative to create standing. *See, e.g., Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006) (dismissing action challenging a flag-abuse statute for lack of standing where the district attorney had provided direct assurances that he did not intend to prosecute the plaintiff under the challenged statute); *Lawson v. Hill*, 368 F.3d 955, 960 (7th Cir. 2004) (holding that plaintiff did not have standing to challenge a flag-abuse statute where the County prosecutor had expressly instructed local law enforcement *not* to pursue

1 investigations against individuals – including the plaintiff – who had altered American flags as part
2 of an anti-war protest).

3   In contrast to an express disavowal of intent, however, where a government or prosecutor
4 *fails* to rule out the possibility of enforcement, courts have taken this as evidence that a plaintiff's
5 fear of prosecution is reasonable – especially where the law has been recently enacted. *See LSO*,
6 205 F.3d at 1155 (holding that where the government "refuses to rule out use of the challenged
7 provision, [that] failure to disavow 'is an attitudinal factor the net effect of which would seem to
8 impart some substance to the fears of [plaintiffs]'") (quoting *American-Arab Anti-Discrimination*
9 *Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991)). For example, in *Babbit*, the court held
10 that there was a credible threat of enforcement even though the challenged statute had never been
11 enforced. 442 U.S. at 302. The Court noted that the statute, on its face, applied to "'any person . . .
12 who violates any provision' of the Act" and further concluded that the plaintiffs were "not without
13 some reason in fearing prosecution" because "the State has not disavowed any intention" of
14 enforcing the law. *Id*. at 303.

15   Similarly, in *Virginia v. American Booksellers Ass'n, Inc.*, 484 US 383 (1988), the plaintiffs
16 challenged a recently-enacted statute limiting the display of materials "harmful to juveniles" even
17 though the statute had never been enforced. The Court held that the plaintiffs had standing
18 nonetheless, reasoning as follows:

19   We are not troubled by the pre-enforcement nature of this suit. The
     State has not suggested that the newly enacted law will not be
20   enforced, and we see no reason to assume otherwise. We conclude that
     plaintiffs have alleged an actual and well-founded fear that the law
21   will be enforced against them. Further, the alleged danger of this
     statute is, in large measure, one of self-censorship; a harm that can be
22   realized even without an actual prosecution.

23 *Id*. at 393.

24   The Ninth Circuit relied on *Virginia v. American Booksellers* in *Bland v. Fessler*, 88 F.3d at
25 737. There, the court held that a plaintiff had standing to challenge a civil statute that prohibited
26 certain types of automated telephone advertising – even though the statute had never been enforced.
27 *Id*. The court relied in large part on the fact that the Attorney General had not disavowed an
28 intention to enforce the statute, rejecting the state's argument that the plaintiff did not have standing

*United States District Court*
For the Northern District of California

because the Attorney General's office "ha[d] not brought or indicated that it would bring any action" under the statute. *Id*. The court stated, "this is far short of a disavowal of enforcement." *Id*. The court also pointed to the fact that the law had been enacted only six years before and "ha[d] not fallen into desuetude." *Id*.

Here, the City's failure to disavow enforcement of the Ordinance, and the absence of *any* affirmative evidence that it does not intend to enforce the Ordinance, places this case squarely in the line of cases in which courts have found a credible threat of prosecution. Although Maguire might have been deprived of standing if the City had expressly disavowed any intention to enforce the Ordinance, it chose not to do so. Rather, it has pursued this litigation aggressively throughout. Moreover, the challenged ordinance is not one that has been languishing on the books, unenforced, for many years. Rather, it was recently enacted and even was the subject of an additional Emergency Ordinance that suggests that the issue of political campaign signs is of some concern to the American Canyon City Counsel. In addition, as discussed above, the City has already enforced the Ordinance as to another candidate. Under these circumstances, Maguire's fear that the Ordinance will be enforced against him if he posts signs on public property or before the 90-day posting period is neither speculative nor imaginary. Indeed, the Court concludes that even if there had been no past enforcement of the Ordinance, the City's failure to disavow any intent to enforce the Ordinance, in combination with the circumstances discussed above, is sufficient to show a credible threat of enforcement. Accordingly, the Court concludes that it was correct in concluding that Maguire has standing to challenge both the 90-day limitation and the ban on posting political signs on public property under the Ordinance.[5]

### D. Ripeness

The City argues that the Court's conclusion that the notice question was not ripe cannot be reconciled with its conclusion that Maguire's challenges to the other provisions of the Ordinance, namely, the 90-day limitation and the public property ban, are ripe. With respect to the 90-day limitation, the Court disagrees. As stated in the Court's Findings, the 90-day limitation is

---

[5] The Court nonetheless amends its Findings to include its additional reasoning supporting its legal conclusion taking into account the amended factual findings on this issue.

14

straightforward. Maguire would like to post his signs outside of that window of time. If he does so, there is a reasonable likelihood the Ordinance will be enforced against him. The City has not pointed to any particular factual issues that needs to be developed in order to adjudicate this issue, which the Court finds ripe for adjudication.

On the other hand, the new evidence offered by the City regarding the public property ban persuades the Court that this issue is not currently ripe. Courts consider two factors when determining whether a question is ripe for judicial intervention: "1) whether the issues are fit for judicial decision; and 2) whether the parties will suffer hardship if we decline to consider the issues." *American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506, 510 (9th Cir. 1992) (*en banc*). In *American-Arab Anti-Discrimination Committee*, the court explained that an issue may not be fit for judicial decision if the record is "sketchy" and there are "many unknown facts." *Id*.

The new evidence offered by the City shows that many of the locations from which Miller's signs were removed are not on City right-of-ways and/or that signs placed on some of these locations would be subject to immediate removal by CALTRANS rather than the City. Further, while it is evident to the Court that the City removed at least one of Miller's signs from a public right-of-way, the precise locations of the sign or signs that were removed is unclear. Because of these uncertainties, it is also unclear which of the locations on which Maguire seeks to post campaign signs – which he says are the same as Miller's – would fall under the Ordinance. Under these circumstances, the Court is in a poor position to determine whether the Ordinance's prohibition on posting of political signs on public property constitutes an equal protection violation. Accordingly, the Court amends its Findings to hold that this issue is not ripe for adjudication. The Court's conclusion that the public property ban contained in the Ordinance violates equal protection is, therefore, vacated.

**IV. CONCLUSION**

For the reasons stated above, the Motion is GRANTED IN PART and DENIED IN PART.

An Amended Findings of Fact and Conclusions of Law is filed concurrently herewith reflecting the amendments discussed above.

IT IS SO ORDERED.

Date: June 28, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge