**United States District Court**
For the Northern District of California

1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                        NORTHERN DISTRICT OF CALIFORNIA
7
8   PAUL MAGUIRE,                                No. C-06-05681 JCS
9              Plaintiffs,
10       v.                                **AMENDED FINDINGS OF FACT AND
                                           CONCLUSIONS OF LAW**
11  CITY OF AMERICAN CANYON, ET AL.,
12             Defendants.
    _____/
13

14        Plaintiff, Paul Maguire, has sued the City of American Canyon and its Director of Public

15  Works in his official capacity, challenging the constitutionality of a city ordinance that was enacted

16  by the city council on August 17, 2006, limiting the posting of political campaign signs.  On

17  February 14, 2007, the Court conducted a non-jury trial in the above matter.  The Court issued its

18  Findings of Facts and Conclusions of Law on March 1, 2007.  Subsequently, the City of American

19  Canyon brought a motion to amend or alter judgment [Docket No. 51] in which it offered new

20  evidence.  In a separate Order [Docket No. 71], the Court held that it would consider the new

21  evidence and further, that it would amend some of its factual findings and legal conclusions based

22  on the new evidence.  The Court now issues its Amended Findings of Fact and Conclusions of Law,

23  Pursuant to Federal Rule of Civil Procedure 52(a), incorporating these amended legal and factual

24  conclusions.

25  **I.      FINDINGS OF FACT**

26          **A.      Factual Background**

27          1.      Paul Maguire ("Maguire") is a resident and registered voter in the City of American

28  Canyon, Napa County, California.

1

2.       The City of American Canyon ("the City" or "American Canyon") is a municipal

corporation of the State of California, located in Napa County, California.

3.       Maguire ran for the American Canyon city council in 2004 and for Mayor of

American Canyon in 2006.  Maguire filed his nomination papers for the office of Mayor of

American Canyon on August 11, 2006, 88 days prior to the November 7, 2006 election.

4.       On August 17, 2006, the City adopted Ordinance 2006-04 ("the Ordinance").

Ordinance 2006-004 added to the City  Code a section entitled "Regulation of Political Signs" (City

Code Section 19.23.035), which provided as follows:

> In addition to those signs exempt from regulation pursuant to City Code section 19.23.030, political signs as defined by City Code section 19.23.120 shall also be exempted subject to compliance with all of the rules and all of the regulations set forth in subsection (A) herein.
>
> A.    Regulations.  The placement or installation of political signs in the City of American Canyon shall in all respects comply with the following:
>
> (1)    No political signs shall be installed or displayed sooner than ninety (90) days preceding the election for which the sign is intended;
>
> (2)    No political sign shall be lighted either directly or indirectly;
>
> (3)    No political sign shall be placed on private property, vacant or otherwise, without the permission of the owner of said property;
>
> (4)    No political sign shall be posted on any public property or in the public right-of-way;
>
> (5)    No political sign shall be posted in violation of any other provisions of the Municipal Code;
>
> (6)    All political signs shall be removed within ten (10) days and recycled by the Department of Public Works after the date of the election except that a sign on behalf of a candidate who is successful in a primary election may be retained for the general election.  Removal of political signs shall be responsibility of the property owner;
>
> (7)    The Director of Public Works and the Chief of Police shall have the right to remove all signs which obstruct visibility on City streets or could contribute to a dangerous condition of public property;
>
> (8)    The Director of Public Works shall have the right to remove all signs placed contrary to any provisions of this section;
>
> (9)    The City Council shall from time to time establish procedures by resolution providing for forfeitable deposits by candidates posting political signs within the City of American Canyon.
>
> B.    Unauthorized Removal of Political Signs.  No person shall remove, destroy, relocate, or otherwise disturb any political sign without the permission of the party who erected the sign.  It shall be presumed, as

United States District Court

For the Northern District of California

to signs for political candidates, that the political candidate or his or her representative is the party who erected the sign. It shall further be assumed that the committee who has registered with the Secretary of State to support a position on a ballot proposition is the party who erected the sign taking the position on a ballot measure. Nothing in this subsection shall prohibit the owner of real property, or his or her authorized representative, from removing a sign from his or her property when the political sign has been erected without his or her consent; and provided further, nothing in this subsection shall prevent the Director of Public Works or his authorized representatives from taking action to abate sign violations pertaining to political signs pursuant to section 19.23.090 of this chapter.[1]

Ordinance 2006-004 also repealed the provision that previously had governed political campaign signs, City Code Section 19.23.030(O). That provision stated as follows:

The following signs shall be exempt from regulation under this chapter:

(O)     Signs pertaining to an election in which a candidate or ballot measure will be voted on and not exceeding a total sign area of thirty-two square feet in sign area. Such signs shall not be displayed earlier than ninety days prior to the election and shall be removed within ten days thereafter, except that a sign on behalf of a candidate who is successful in a primary election may be retained for the general election. No such sign shall be a roof sign. Removal of political signs shall be the responsibility of the property owner.

Finally, Ordinance 2006-004 amended City Code Section 19.23.120, containing definitions for the chapter, to add definitions for the terms "Political Signs" and "Public Right of Way." "Political Signs" is defined as "a sign erected prior to an election to advise or identify a candidate, campaign issue, election proposition, or other related matter." "Public Right of Way" is defined as follows:

---

[1] City Code Section 19.23.090 provides, in relevant part, as follows:

B.     The planning director shall remove or cause the removal of any sign constructed, altered or maintained in violation of this chapter.

1.     Such removal may occur fifteen days after the date of mailing of registered or certified written notice to the owner of the sign, if known, at the last known address or to the owner of the property as shown on the latest assessment roll, or to the occupant of the property at the property address. The notice shall describe the sign and specify the violation involved, and indicate that the sign will be removed if the violation is not corrected within fifteen days.

3

United States District Court

For the Northern District of California

> [A]ny area of real property dedicated to or owned in fee by the City or
> the public or any other public body, or over which the City or the
> public or any other public body holds an easement for public street,
> alley, sidewalk, pedestrian, equestrian, or public utility purposes
> which is within the City boundaries excluding areas of real property
> which are on, or adjacent to, the side or rear yard of any parcel or any
> area within the curtilage of any parcel.

5.      On September 5, 2006, the City passed an Urgency Ordinance that states that "questions have arisen as to whether the Director of Public Works and Chief of Police are the appropriate City individuals to enforce provisions regulating the placement and removal of political signs and it has determined that a more appropriate individual would be the City Manager and his or her designee."  Accordingly, subsections A(7) and A(8) of City Code Section 19.23.035 were amended to replace the words "Director of Public Works and Chief of Police" (subsection A(7)) and "Director of Public Works" (subsection A(8)) with "the City Manager and his or her designee."

6.      On September 8, 2006, a campaign sign that Maguire had posted at the intersection of Theresa Avenue and Eucalyptus Street in American Canyon was taken down by Public Works Superintendent Fred Simonson. Simonson removed the sign because he believed that it was a safety hazard.  He did not contact Maguire prior to removing the sign because he could not find a contact number for Maguire but he left a message for Maguire a few days later, on September 11, 2006, at Maguire's office informing him that his sign had been removed and that it could be picked up at the City's corporation yard.

7.      Maguire intends to run again for the office of Mayor of American Canyon, either in the scheduled 2008 election or in an earlier recall election to replace the current mayor.  He would like to post temporary campaign signs prior to the 90-day period leading up to either election.[2]  In addition, he would like to post some of his temporary campaign signs on public property in specific locations which he has identified.  These locations are the locations on which another candidate, J.T.

---

[2]  In support of this finding, the Court relies on the Declaration of Paul Maguire as Trial Testimony, ¶ 3.  The City's objection to this portion of the Maguire Declaration as "argumentative, speculative and self-serving" is overruled.  The evidence shows that Maguire has been active in American Canyon politics for years, including running for political office at least twice and posting signs in connection with those campaigns.  In this context, the Court finds Maguire's representations about his future intentions to be credible.

**United States District Court**
For the Northern District of California

1   Miller, placed signs prior to the November 2006 election in American Canyon.  Miller's signs were

2   removed from these locations in October 2006.  One or more of Miller's signs was removed by the

3   City because it was posted on a public right of way in violation of City Code Section

4   19.23.035(A)(4).[3]  Because of Miller's experience, Maguire refrained from posting campaign signs

5   in these locations in the period leading up to the November 2006 election because he feared they

6   would be removed pursuant to City Code Section 19.23.035(A)(4).

7          8.     The City Council has authorized the defense of this litigation but has taken no formal

8   position as to the enforcement of Ordinance 2006-004 or whether it may amend the Ordinance prior

9   to the next election.  Similarly, the City Attorney has expressed no opinion as to whether he intends

10   to enforce the Ordinance in its current form. However, counsel for the City stated at trial that he

11   presumes the City will enforce the Ordinance.  Based on the City's removal of Miller's campaign

12   signs from public property in the period leading up to the November 2006 election, as well as its

13   failure to disavow any intention of enforcing Ordinance 2006-004, the Court finds that there is a

14   credible threat that the City will enforce the Ordinance if Maguire posts campaign signs more than

15   90 days prior to the next election or on public property.

16          **B.     Procedural Background**

17          9.     On September 15, 2006, Maguire filed the complaint in this action, asserting claims

18   under 42 U.S.C. §§ 1983 and 1985.[4]  In his complaint, Maguire alleged that Ordinance 2006-04

19   violates his rights to free speech and association, equal protection, and due process under the First

20   _____

21          [3] In support of this finding, the Court relies on the Declaration of J.T. Miller as trial testimony,
    and, in particular, Miller's representations that: 1) in the November 2006 election for the American
22   Canyon City Council, he posted temporary political signs in specific identified locations; 2) those signs
    were removed; 3) Miller received an e-mail (also in evidence) from the superintendent of public works
23   threatening to remove some of his signs because they were in the public right-of-way and referencing
    the Ordinance; 4) subsequently, Miller's signs were removed; and 5) Miller was able to retrieve some
24   of his signs at the City Corporations Yard. The Court rejects the City's objection that the Miller
    Declaration is irrelevant because Miller is not a plaintiff in this case.  Miller's experience is relevant to
25   the question of whether Maguire has a reasonable fear that the Ordinance will be enforced against him
    if he places signs on the same locations Miller did, as Maguire states he would like to do.  Finally, the
26   Court notes that the City stipulated at trial that in the fall of 2006 the City, did, in fact, remove campaign
    signs that Miller had posted on public property.

27          [4] At trial, Plaintiff stipulated to the dismissal of his claim under 42 U.S.C.§ 1985.  Accordingly,
28   that claim is dismissed with prejudice.

United States District Court

For the Northern District of California

1  and Fourteenth Amendments of the United States Constitution.  In addition to suing the City of

2  American Canyon, Maguire named as a defendant the Director of Public Works of the City of

3  American Canyon, who Maguire sued in his official capacity based on his authority to enforce the

4  challenged statute.  Maguire requested entry of declaratory judgment and a temporary restraining

5  order, preliminary injunction and/or permanent injunction prohibiting the City of American Canyon

6  from enforcing the challenged ordinance.

7  10.  On October 13, 2006, Maguire filed a Motion for Preliminary Injunction, noticed for

8  hearing on November 17, 2006.  Before that motion was heard, on October 27, 2006, Maguire filed a

9  declaration in support of the Motion for Preliminary Injunction in which he requested, for the first

10  time, a temporary restraining order.  In a telephonic hearing held on October 31, 2006, the Court

11  denied Maguire's request for a temporary restraining order.  In addition, the Court vacated the

12  November 17, 2006 hearing date on the Motion for Preliminary Injunction and scheduled a trial on

13  the merits, to be held February 14, 2007.[5]

14  11.  Maguire challenges Ordinance 2006-04 on three grounds: 1) the 90-day durational

15  limitation that applies to all political signs, found in City Code Section 19.23.035(A)(1),

16  impermissibly infringes his First Amendment right to free speech; 2) the right of the Public Works

17  Director to remove political signs that violate "any provision" of § 19.23.035 without any notice

18  requirement violates his right to Due Process; and 3) the ordinance violates the Equal Protection

19  clause of the Fourteenth Amendment because it treats commercial speech more favorably than

20  political speech, in particular, by banning political campaign signs from public property but allowing

21  other types of signs, such as special events signs, to be posted on such property under some

22  circumstances. Maguire seeks a declaration by the Court that Ordinance 2006-004 is

23  unconstitutional for the reasons stated above and a permanent injunction enjoining the City from

24  enforcing the ordinance.  He also requests an award of costs, including reasonable attorneys' fees.

25

26

27  [5]  Because the Court addresses Plaintiff's claims on the merits, the request for entry of a
preliminary injunction is now moot.  Accordingly, Plaintiff's October 13, 2006 motion is denied on that
28  basis.

**United States District Court**
For the Northern District of California

At trial, the parties stipulated that the City Manager, in his official capacity, should be substituted for the Public Works Director in light of the September 5, 2006 Urgency Ordinance shifting the authority to remove political signs under Section 19.23.035 from the Public Works Director to the City Manager.[6]

## II.     CONCLUSIONS OF LAW

### A.     Standing, Mootness, and Ripeness

12.     The City advances four, closely related arguments in support of its position that Maguire does not have standing to challenge Ordinance 2006-004.  First, the City asserts that Maguire does not have standing because Ordinance 2006-004 has never been enforced against him and therefore, he has not been harmed.  In particular, the one sign that was removed, the City asserts, was removed for safety reasons and not because it violated the provisions Maguire challenges. Second, even if the sign had been removed because it violated one of the challenged provisions, the City contends, Maguire's case is moot because the election for which the sign was posted has already occurred.  Third, the City argues that to the extent Maguire's claims are based on threatened future injury, Maguire has not demonstrated that he has a reasonable fear of prosecution. Finally, the City argues that the factual record is insufficient to adjudicate Maguire's claims – in large part because the Ordinance has not actually been enforced against Maguire – and therefore, even if there is Constitutional standing, Maguire's claims are not ripe for adjudication.

Under Article III of the Constitution, a plaintiff must demonstrate the existence of a  "case or controversy" in order to have standing to assert an action in federal court.  *American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1992) (*en banc*) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  To meet this requirement, plaintiffs must show "at an

---

[6]  In its opening trial brief, the City argued that the Director of Public Works was entitled to qualified immunity and therefore, that the claims against him should be dismissed. The City also argued that the Director of Public Works should be dismissed because he is no longer the official responsible for removing political signs under the sign ordinance.  Now that the City Manager has been substituted for the Director of Public Works, the second argument is moot.  The first argument fails – assuming the City wants to assert it on behalf of the City Manager – because the doctrine of qualified immunity does not apply to actions that seek prospective relief only.  *See San Francisco Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 825 (9th Cir. 1987) ("[i]t is settled law . . . that the Eleventh Amendment does not bar an action seeking prospective relief from enforcement of an unconstitutional statute").  The City implicitly concedes this point by dropping this argument in its reply trial brief.

**United States District Court**
For the Northern District of California

1   irreducible minimum that they personally have suffered some actual or threatened injury as a result

2   of the putatively illegal conduct of the defendant . . . and that the injury fairly can be traced to the

3   challenged action and is likely to be redressed by a favorable decision." *Id*. (quotations and citations

4   omitted).

5           In *Babbit v. United Farm Workers National*, 442 U.S. 289, 299 (1979), the Court explained

6   that a plaintiff who wishes to engage in conduct that is proscribed by statute and has a Constitutional

7   dimension is not required to wait until he is prosecuted to seek legal redress. *Id*. "That one should

8   not have to risk prosecution to challenge a statute is especially true in First Amendment cases, '[f]or

9   free expression – of transcendant value to all society, and not merely to those exercising their rights

10  – might be the loser.'" *Bland v. Fessler*, 88 F.3d 729, 736-37 (9th Cir. 1996) (quoting *Dombrowski*

11  *v. Pfister*, 380 U.S. 479, 486 (1965)); *see also LSO, Ltd. v. Stroh*, 205 F.3d 1146,1155 (9th Cir.

12  2000) ("when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts

13  dramatically toward a finding of standing"). On the other hand, *Babbit* also made clear that this

14  principle does not apply where the plaintiff has "no fears of state prosecution except those that are

15  *imaginary or speculative*." *Id*. (citation omitted) (emphasis added).

16          In distinguishing between a "credible threat" and a fear that is "imaginary and speculative,"

17  courts have made clear that "enforcement history alone is not dispositive." *LSO,* 205 F.3d at 1155.

18  Thus, past enforcement, while significant, is not required to establish a credible threat of future

19  prosecution. *Id*. Conversely, even where there *has* been past enforcement, there may not be a

20  credible threat of future prosecution where there is affirmative evidence that the government does

21  not intend to prosecute. *Id*. For example, where the government expressly disavows any intent to

22  prosecute, courts have found that the likelihood of prosecution is too speculative to create standing.

23  *See, e.g., Winsness v. Yocom*, 433 F.3d 727 (10th Cir. 2006) (dismissing action challenging a flag

24  abuse statute for lack of standing where the district attorney had provided direct assurances that he

25  did not intend to prosecute the plaintiff under the challenged statute); *Lawson v. Hill*, 368 F.3d 955,

26  960 (7th Cir. 2004) (holding that plaintiff did not have standing to challenge a flag-abuse statute

27  where the County prosecutor had expressly instructed local law enforcement *not* to pursue

28

8

**United States District Court**
For the Northern District of California

1  investigations against individuals  – including the plaintiff – who had altered American flags as part

2  of an anti-war protest).

3       In contrast to an express disavowal of intent, however, where a government or prosecutor

4  *fails* to rule out the possibility of enforcement, courts have taken this as evidence that a plaintiff's

5  fear of prosecution is reasonable – especially where the law has been recently enacted.  *See LSO*,

6  205 F.3d at 1155 (holding that where the government "refuses to rule out use of the challenged

7  provision, [that] failure to disavow 'is an attitudinal factor the net effect of which would seem to

8  impart some substance to the fears of [plaintiffs]") (quoting *American-Arab Anti-Discrimination*

9  *Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991)).  For example, in *Babbit*, the court held

10  that there was a credible threat of enforcement even though the challenged statute had never been

11  enforced.  442 U.S. at 302.   The Court noted that the statute, on its face, applied to "'any person . . .

12  who violates any provision' of the Act" and further concluded that the plaintiffs were "not without

13  some reason in fearing prosecution" because "the State has not disavowed any intention" of

14  enforcing the law.  *Id*. at 303.

15       Similarly, in *Virginia v. American Booksellers Ass'n, Inc.*, 484 US 383 (1988), the plaintiffs

16  challenged a recently-enacted statute limiting the display of materials "harmful to juveniles" even

17  though the statute had never been enforced.  The Court held that the plaintiffs had standing

18  nonetheless, reasoning as follows:

19         We are not troubled by the pre-enforcement nature of this suit. The
       State has not suggested that the newly enacted law will not be

20         enforced, and we see no reason to assume otherwise. We conclude that
       plaintiffs have alleged an actual and well-founded fear that the law

21         will be enforced against them. Further, the alleged danger of this
       statute is, in large measure, one of self-censorship; a harm that can be

22         realized even without an actual prosecution.

23  *Id*. at 393.

24       The Ninth Circuit relied on *Virginia v. American Booksellers* in *Bland v. Fessler*, 88 F.3d at

25  737.  There, the court held that a plaintiff had standing to challenge a civil statute that prohibited

26  certain types of automated telephone advertising – even though the statute had never been enforced.

27  *Id*.  The court relied in large part on the fact that the Attorney General had not disavowed an

28  intention to enforce the statute, rejecting the state's argument that the plaintiff did not have standing

**United States District Court**
For the Northern District of California

1   because the Attorney General's office "ha[d] not brought or indicated that it would bring any action"

2   under the statute. *Id.* The court stated, "this is far short of a disavowal of enforcement." *Id.* The

3   court also pointed to the fact that the law had been enacted only six years before and "ha[d] not

4   fallen into desuetude." *Id.*

5           The Ninth Circuit addressed the question of standing by a plaintiff challenging a city sign

6   ordinance in *Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976). In *Baldwin*, the court

7   addressed whether a property owner, resident and registered voter had standing to challenge an

8   ordinance regulating temporary signs. 540 F.2d 1360 (9th Cir. 1976). The plaintiffs had sued the

9   city a month prior to a general election, challenging the sign ordinance on constitutional grounds on

10  the basis that it had prevented them from erecting signs of the size and in the locations they desired

11  in support of a particular candidate for the City Council, Melvin Kerwin. *Id.* at 1364. The city

12  argued that the plaintiffs did not have standing to bring the challenge because by the time of the trial,

13  the election was over, Kerwin had lost, and he did not intend to run for office again. *Id.* The court

14  rejected the city's position, however, finding that there was a controversy of sufficient immediacy

15  and reality to justify issuance of a declaratory judgment:

16          [The plaintiff] testified that he was engaged actively in politics in the
            Redwood City area for nearly 20 years. He has participated, and made
17          use of political signs, in both partisan and nonpartisan elections,
            including elections for the Redwood City Council and the board of the
18          Redwood City high school. He has supported candidates other than
            Melvin Kerwin indeed, has been a candidate himself. He testified that
19          there would be future occasions in which he would want to use such
            political posters in a manner prohibited by the challenged provisions.
20          The district court found that Redwood City Officials would continue
            to enforce the challenged provisions against [the plaintiff] or other
21          persons wishing to erect political campaign posters in future municipal
            elections. Thus, the record established the [plaintiff's] continuing
22          interest in local political campaigns involving the use of such signs
            and a continuing determination on the part of Redwood City officials
23          to enforce the ordinance. On these facts, a future confrontation is
            likely; an immediate and real controversy exists.

24

25  *Id.* at 1365.

26          Here, the threat of enforcement is even more immediate than in *Baldwin*. Not only does

27  Maguire have a history of involvement in American Canyon politics; he has declared his intention to

28  run for Mayor in 2008, or even earlier. He would like to post signs on public property in locations

United States District Court
For the Northern District of California

1    he has identified – indeed, locations on which he posted political signs in past campaigns, prior to

2    the enactment of the new political sign ordinance –  and he would like to do so more than 90 days

3    before the election.  Further, Maguire's fear that the Ordinance will be enforced against him is

4    reasonable: the City's failure  to disavow enforcement of the Ordinance, and the absence of *any*

5    affirmative evidence that it does not intend to enforce the Ordinance, places this case squarely in the

6    line of cases in which Courts have found a credible threat of prosecution.  Although Maguire might

7    have been deprived of standing if the City had expressly disavowed any intention to enforce the

8    Ordinance, it chose not to do so.  Rather, it has pursued this litigation aggressively throughout.

9    Moreover, the challenged ordinance is not one that has been languishing on the books, unenforced,

10    for many years but is, instead, recently enacted.  It was even was the subject of an additional

11    Emergency Ordinance, suggesting that the issue of political campaign signs is of some concern to

12    the American Canyon City Counsel.

13        While the Court's finding that the City has already enforced the Ordinance as to Miller lends

14    further support to its conclusion that Maguire has standing, even if there had been *no* past

15    enforcement of the Ordinance, the City's failure to disavow any intent to enforce the Ordinance, in

16    combination with the circumstances discussed above, is sufficient to show a credible threat of

17    enforcement.

18        The Court rejects the City's assertion that because the 2006 election has passed, Maguire's

19    claims are moot.  The City relies on *Golden v. Zwickler*, 394 U.S. 103 (1969), in which the Supreme

20    Court held that a plaintiff's challenge to an ordinance prohibiting distribution of handbills was moot

21    because the plaintiff's "sole concern" was distributing handbills relating to a particular candidate

22    who subsequently was appointed to the state supreme court and therefore, was very unlikely to run

23    for political office again.  In *Baldwin*, the Ninth Circuit expressly rejected the defendant's reliance

24    on *Golden v. Zwickler*, distinguishing the facts of that case on the basis that the plaintiff desired to

25    engage in the proscribed conduct *only* as to a single candidate, in contrast to the plaintiffs in

26    *Baldwin*, who continued to be actively engaged in politics.  Similarly, in this action, the controversy

27    is not moot because, in contrast to the facts in *Golden v. Zwickler*, it is very likely that Maguire will

28    engage in conduct in the near future that will result in a confrontation with the City.

**United States District Court**
For the Northern District of California

1  Next, the Court addresses whether Maguire's claims are ripe for adjudication.  Even where a

2  party has standing, a court may decline to adjudicate an issue if it concludes that the timing is not

3  appropriate for judicial intervention.  *Renne v. Geary*, 501 U.S. 312, 320 (1991).  "When considering

4  ripeness, we must determine whether the federal court is the most appropriate institution to address

5  the plaintiffs' claims at this particular time."  *American-Arab Anti-Discrimination Comm. v.*

6  *Thornburgh*, 970 F.2d at 510 (citations omitted).  Courts consider two factors when determining

7  whether a question is ripe for judicial intervention: "1) whether the issues are fit for judicial

8  decision; and 2) whether the parties will suffer hardship if we decline to consider the issues."  *Id.*

9  With respect to the first factor, the court in *American-Arab Anti-Discrimination Comm. v.*

10  *Thornburgh* noted that "[e]ven in the case of a pre-enforcement challenge . . . the exercise of

11  jurisdiction without proper factual development is inappropriate."  *Id.* at 511.

12  These principles are illustrated in the Supreme Court's decision in *Renne*, on which the City

13  relies.  In *Renne*, the plaintiffs challenged as unconstitutional a provision in the California

14  constitution prohibiting political parties from endorsing candidates for nonpartisan office.  501 U.S.

15  at 314.  They particularly objected to the City Attorney's policy of deleting party endorsements from

16  candidate statements in the government printed voter pamphlets.  *Id.* at 315.  In support of the

17  claims, an affidavit by the chairman of the Republican Committee was submitted stating that "[i]t is

18  the plan and intention of the Republican Committee to endorse candidates for nonpartisan office in

19  as many future elections as possible."  *Id.* at 317.  The Court held that the issue was not ripe for

20  review, explaining its conclusion as follows:

21      Respondents do not allege an intention to endorse any particular
        candidate, nor that a candidate wants to include a party's or committee
22      member's endorsement in a candidate statement.  We possess no
        factual record of an actual or imminent application of [the statute]
23      sufficient to present the constitutional issues in "clean-cut and
        concrete form."   . . . We do not know the nature of the endorsement,
24      how it would be publicized, or the precise language petitioners might
        delete from the voter pamphlet.  To the extent respondents allege that a
25      committee or committee member wishes to "support" or "oppose" a
        candidate other than through endorsements, they do not specify what
26      form that support or opposition would take.

27  *Id.* at 321-322.  The Court went on to conclude that deferring adjudication would not impose a

28  "substantial hardship" on the plaintiffs because voters could learn of party endorsements through

**United States District Court**
For the Northern District of California

1   means other than the voter pamphlets and if the parties desired to include a particular endorsement in

2   a voter pamphlet, the constitutionality of the City Attorney's refusal to include that endorsement

3   could be litigated at that time "in the context of a concrete dispute." *Id*. at 323.

4          Here, the Court concludes that Maguire's challenge relating to the 90-day limitation is ripe,

5   but that his challenges to the notice requirements and the public property prohibition is not.   With

6   respect to the 90-day limitation, *Renne* is not on point because the issue before the Court is

7   straightforward: Maguire would like to post his signs prior to the 90-day period and if he does so,

8   there is a reasonable likelihood the Ordinance will be enforced against him.  The City has not

9   pointed to any particular factual issues that needs to be developed in order to adjudicate this issue,

10  which the Court finds ripe for adjudication.

11         In contrast, the record regarding the notice required for removal of signs under City Code

12  Section 19.23.035  is less clear.  On one hand, the plain language of City Code Section

13  19.23.035(A)(8), as amended by the September 5, 2006 Urgency Ordinance, appears to grant

14  summary authority to the City Manager to remove political signs that violate the political sign law.

15  That authority appears to be independent of the authority of the Director of Public Works found in

16  City Code Section 19.23.090 – which *does* contain a notice requirement – and affirmed in Section

17  19.23.035(B).  Were the City to interpret City Code Section 19.23.035 to allow such summary

18  removal, City Code Section 19.23.035 might well run awry of the requirements of due process.  *See*

19  *Baldwin*, 540 F.2d at 1373 (holding that provision that allowed summary removal of political signs

20  even when they were neither abandoned nor hazardous was unconstitutional).

21         On the other hand, the City takes the position that it is required, under the current statutory

22  framework, to notify those who post political signs of its intent to remove non-compliant political

23  signs *prior* to removing those signs.  Further, there is scant evidence in the record regarding the

24  City's actual practice with respect to notice under City Code Section 19.23.035.  Maguire's sign was

25  removed by the Director of Public Works because it was seen as a safety hazard, not because it

26  violated either the 90-day limitation or the prohibition against posting political signs on public

27  property.  Thus, the lack of prior notice as to that sign sheds little light on what sort of notice might

28  be provided regarding removal of political signs for violation of those provisions.  Further, there is

1   little evidence in the record regarding the circumstances under which Miller's signs were removed or

2   the efforts, if any, the City made to contact Miller prior to their removal.

3         Given that the record is poorly developed as to what notice, if any, the City has given in the

4   past or will give in the future, prior to removal of political signs under City Code Section 19.23.035,

5   the Court concludes that it is premature to address Maguire's due process challenge.

6         In addition, the new evidence offered by the City regarding the public property ban

7   persuades the Court that this issue also is not currently ripe.  The new evidence offered by the City

8   shows that many of the locations from which Miller's signs were removed are not on City right-of-

9   ways and/or that signs placed on some of these locations would be subject to immediate removal by

10  CALTRANS rather than the City.  Further, while it is evident to the Court that the City removed at

11  least one of Miller's signs from a public right-of-way, the precise locations of the sign or signs that

12  were removed is unclear.  Because of these uncertainties, it is also unclear which of the locations on

13  which Maguire seeks to post campaign signs – which he says are the same as Miller's – would fall

14  under the Ordinance.  Under these circumstances, the Court is in a poor position to determine

15  whether the Ordinance's prohibition on posting of political signs on public property constitutes an

16  equal protection violation.

17        While the Court is cognizant that Maguire may suffer some hardship as a result of its

18  decision to defer ruling on these issues, the very poorly developed factual record persuades the Court

19  that adjudication of these issues would be improper.

20        Accordingly, the Court addresses below the constitutionality of the 90-day limitation in City

21  Code Section 19.23. 035.

22        **C.**    **The 90-day Limitation**

23        13.    Maguire argues that the 90-day limitation found in City Code Section

24  19.23.035(A)(1) violates the First Amendment, relying primarily on a decision by Judge Schwarzer

25  of this Court, *City of Antioch v. Candidates' Outdoor Graphic Serv.* ("*City of Antioch*"), 557 F.

26  Supp. 52 (N.D. Cal. 1982).  The reasoning in that case is set forth here in some detail as it is

27  particularly pertinent to the issues currently before the Court.  In *City of Antioch*, a local ordinance

28  limiting the posting of campaign signs to 60 days before the election was challenged by an

**United States District Court**
For the Northern District of California

1    individual who lived in the city and wished to post signs outside of that period and by an

2    organization that prints and posts political signs. *Id.* at 53 n. 1. Like Maguire, the plaintiffs in that

3    case sought a declaratory judgment that the law violated the First and Fourteenth Amendments and

4    an injunction enjoining its enforcement. *Id.* at 54.

5            The court in *City of Antioch* began by addressing whether it should treat the ordinance as a

6    law regulating "time, place and manner" of speech or rather, whether it should apply the more

7    stringent test adopted by the Ninth Circuit in *Rosen v. Port of Portland*, 641 F.2d 1243 (9th Cir.

8    1981). Citing the Supreme Court's decision in *Linmark Associates v. Willingboro Township*, 431

9    U.S. 85 (1977) (holding that ordinance prohibiting posting of "For Sale" signs could not be

10   considered a "time, place and manner" regulation because it allowed the posting of other types of

11   signs), the court concluded that the 60-day limitation was not a "time, place and manner" restriction

12   because it did not "attempt to determine whether and at what times the exercise of First Amendment

13   rights [was] compatible or incompatible with the normal uses of a particular forum or place . . . [but

14   rather] impose[d] a general ban on the posting of signs promoting the candidacy of certain

15   individuals or advocating a certain viewpoint on an upcoming ballot proposition" throughout the city

16   for all but two months a year. *Id.* at 56. Because the law "single[d] out political speech for special

17   treatment," the court concluded that the standards set forth in *Rosen* were the appropriate ones to

18   apply.

19           In *Rosen*, the Ninth Circuit addressed the constitutionality of an ordinance regulating the

20   distribution of literature at the Portland Airport. 641 F.2d 1243, 1244-1245 (9th Cir. 1981).

21   Beginning with the premise that any law that regulates or infringes the exercise of First Amendment

22   rights "'must survive the most exacting scrutiny,'" *id.* at 1246 (quoting *Buckley v. Valeo*, 424 U.S. 1,

23   64 (1976)), the court laid out the general principles to be applied in analyzing such statutes:

24                   First, the law is presumptively unconstitutional and the state bears the
                     burden of justification. . . . Second, the law must bear a substantial
25                   relation . . . to a weighty governmental interest. . . . The law cannot be
                     justified by a showing of some legitimate governmental interest. . . .
26                   Third, the law must be the least drastic means of protecting the
                     governmental interest involved; its restrictions may be no greater than
27                   necessary or essential to the protection of the governmental interest.

28   *Id.* at 1246 (citations and quotations omitted).

**United States District Court**
For the Northern District of California

1    Having concluded that the more stringent standards set forth in *Rosen* applied, the court in

2   *City of Antioch* proceeded to address the plaintiffs' specific claims, that is, that the challenged

3   ordinance violated the Fourteenth Amendment's guarantee of equal protection and the First

4   Amendment's guarantee of free speech.  Regarding the equal protection challenge, the court looked

5   to two Supreme Court cases that address the question of equal protection in the First Amendment

6   context, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981) ("*Metromedia*") and *Police*

7   *Dep't of the City of Chicago v. Mosely*, 408 U.S. 92 (1972).

8    In *Metromedia*, the Court addressed the constitutionality of an ordinance that permitted

9   billboards that advertised goods or services offered on the property ("onsite billboards"), prohibited

10  advertising of goods and services produced elsewhere and prohibited non-commercial advertising

11  unless it fell under one of the ordinance's specified exceptions.  453 U.S. at 502.  A plurality of the

12  Court concluded that the ordinance violated equal protection because instead of affording

13  noncommercial speech a greater degree of protection than commercial speech, as the Supreme

14  Court's commercial speech cases instruct, the ordinance "effectively invert[ed] this judgment, by

15  affording a greater degree of protection to commercial than to noncommercial speech." *Id*. at 513.

16  The plurality explained, "[t]here is a broad exception for onsite commercial advertisements, but

17  there is no similar exception for noncommercial speech." *Id*.

18   In *Police Dep't of the City of Chicago v. Mosely*, 408 U.S. 92 (1972) ("*Mosely*"), the Court

19  addressed the constitutionality of a city ordinance that prohibited peaceful picketing within 150 feet

20  of a school but made an exception for picketing of any school involved in a labor dispute.  The Court

21  held that the ordinance violated equal protection and the First Amendment. *Id*. at 96.  The Court

22  explained:

23          [U]nder the Equal Protection Clause, not to mention the First
            Amendment itself, government may not grant the use of a forum to
24          people whose views it finds acceptable, but deny use to those wishing
            to express less favored or more controversial views.  And it may not
25          select which issues are worth discussing or debating in public
            facilities.  There is an "equality of status in the field of ideas," and
26          government must afford all points of view an equal opportunity to be
            heard. Once a forum is opened up to assembly or speaking by some
27          groups, government may not prohibit others from assembling or
            speaking on the basis of what they intend to say.  Selective exclusions
28

16

United States District Court
For the Northern District of California

1    from a public forum may not be based on content alone, and may not
     be justified by reference to content alone.

2

3    *Id*. at 97.  The Court went on to hold that while a regulation may satisfy First Amendment and equal

4    protection requirements if it is narrowly tailored to further a substantial governmental interest, the

5    challenged regulation did not meet those requirements.  *Id*. at 101-102.  The Court stated, "[f]ar from

6    being tailored to a substantial governmental interest, the discrimination among pickets is based on

7    the content of their expression.  Therefore, under the Equal Protection Clause, it may not stand."  *Id*.

8    at 102.

9          Drawing on *Metromedia* and *Mosely*, the court in *City of Antioch* concluded that the 60-day

10   limitation on political signs did not satisfy the requirements of the equal protection clause.  The

11   court explained:

12              The Antioch political sign ordinance is content neutral in the sense
                that it does not discriminate among political messages.  But it imposes
13              severely restrictive time limits on the posting of political signs – limits
                not imposed, for example, on temporary signs advertising upcoming
14              commercial, charitable or civic events.  By singling out political signs
                for restrictive treatment, the Antioch ordinance clearly conflicts with
15              the *Metromedia* plurality and the *Mosely* line of cases.  Commercial
                speech, although subject to other limitations in the city's municipal
16              sign ordinance, is merely regulated in Antioch; political speech is
                outlawed except during the sixty day period before an election.
17

18   557 F. Supp. at 58.

19         The court in *City of Antioch* rejected the city's reliance on *Lehman v. Shaker Heights*, 418

20   U.S. 298 (1974) – a case on which the City of American Canyon also relies.  In *Lehman*, a political

21   candidate sought declaratory judgment and injunctive relief when the city of Shaker Heights,

22   pursuant to a long established policy, refused to allow him to purchase advertising space in the cars

23   of the city's rapid transit system.  *Id*. at 300-302.  The plaintiff argued that the refusal violated his

24   right to equal protection and his First Amendment rights because commercial advertisements were

25   permitted in the cars.  *Id*.  The Supreme Court disagreed, focusing on the fact that the streetcar

26   audience is a "captive audience."  *Id*. at 302.  The court explained that the city is engaged in a

27   "commercial venture": it "must provide rapid, convenient, pleasant and inexpensive service to the

28   commuters of Shaker Heights."  *Id*.  As a result, the Court concluded, the situation was "different

United States District Court

For the Northern District of California

1  from traditional settings where First Amendment values unalterably prevail." *Id*.  The court in *City*

2  *of Antioch* concluded that because *Lehman* addressed a "'unique fact situation involving government

3  created forums,'" 557 F. Supp. at 57-58 (quoting *Metromedia* plurality, 453 U.S. at 514 n. 19), it did

4  not apply to the 60-day limitation that was being challenged in that case.

5       Turning to First Amendment principles, the Court in *City of Antioch* concluded that the 60-

6  day limitation was not "the least drastic means of protecting its governmental interest" under the

7  *Rosen* test.  *Id*. at 58.  The court did not dispute that the government's interest in "keep[ing] the

8  community's streets, sidewalks, parks and business and residential districts attractive, clean and

9  visually uncluttered" was a "legitimate" government objective.  *Id*. at 59.  Nonetheless, it concluded

10  that banning temporary political signs for all but two months of the year "does not adequately

11  accommodate [the city's] aesthetic and environmental goals to the public's right to be informed

12  about upcoming elections."  *Id*.  The court explained,

13       The temporary political sign offers special advantages to the candidate
        seeking public office and to the advocate promoting a particular
14       position on a state ballot measure.  These signs are a relatively
        inexpensive means of campaigning.  Their use can be localized so that
15       certain areas which the advocate wishes especially to reach may be
        targeted.  A candidate or partisan can use the temporary sign to place a
16       name or an issue before the public.  In a campaign for political office,
        political posters can be effectively utilized to build up the candidate's
17       name recognition and to establish him as a serious contender.  The
        temporary political sign has special value to the non-incumbent or
18       relatively unknown candidate who can use the signs to identify his
        name among the electorate.  The less well-known candidate can test
19       the waters to see whether his candidacy is viable before going to more
        expensive media such as television or radio.

20

21  *Id*.

22       The court in *City of Antioch* also pointed to two other decisions in which courts had found

23  similar time limits to be unconstitutional: *Van v. Travel Info. Council*, 52 Or. App. 399 (1981) and

24  *Orazio v. Town of Hempstead*, 426 F. Supp. 1144 (E.D.N.Y. 1977).  In *Van*, the plaintiff challenged

25  the constitutionality of a statute that limited the posting of political campaign signs on land

26  bordering state highways to 60 days before the election.  52 Or. App. at 411.  The court held that the

27  provision violated the First Amendment, finding that the state's interest in aesthetics was not

28  sufficient to justify the significant restriction imposed by the regulation.  *Id*. at 412.  The court noted,

18

**United States District Court**
For the Northern District of California

1    "[t]he process of acquainting the public with new candidates is a slow one.  Two months is simply

2    not enough time to allow a relatively unknown person to achieve household name familiarity."  *Id*. at

3    413.  Similarly, in *Orazio*, the court held unconstitutional a city ordinance that allowed political

4    signs to be posted only six weeks before an election.  426 F. Supp. at 1149.  The court found the

5    city's professed interest in aesthetics to be legitimate but concluded that the measure was not

6    narrowly tailored to that objective because it discriminated based on content.  *Id*.  The court rejected

7    the city's reliance on *Lehman*, concluding that that decision was limited to "the captive audience

8    situation."  *Id*.  Finally, the court went on to hold that "no time limit on the display of pre-election

9    political signs is constitutionally permissible under the First Amendment."  *Id*.  The court opined,

10   "politics is an important business, and it is difficult to perceive what governmental interest is served

11   by placing time limits on the public's opportunity to be informed about candidates who are seeking

12   public office or organizations which support them."  *Id*.

13          Finding the decisions in *Van* and *Orazio* to be persuasive, and based on the reasoning set

14   forth above, the court in *City of Antioch* concluded that the 60-day limitation violated the First

15   Amendment.  557 F. Supp. at 60.  It noted that not all measures to regulate temporary signs were

16   necessarily unconstitutional and that some less drastic measures that might be permissible would be

17   "institut[ing] clean up or removal requirements," "provid[ing] more stringent regulations for the

18   areas of the City more in need of protection" and "regulat[ing] the size, design and construction of

19   the posters."  *Id*. at 61.  The court *did not* suggest that extension of the time to post political signs,

20   for example, from 60 to 90 days before the election, would be a permissible alternative.

21          The City of American Canyon asserts that *City of Antioch* does not apply because the

22   limitation at issue in this case is 90 days rather than 60 days.  According to the City, this longer time

23   period covers the entire period between the last date to register as a candidate and the election and

24   therefore, adequately balances Maguire's First Amendment interests with the City's legitimate

25   interest in aesthetics.  The Court disagrees.

26          Having enacted an ordinance that bans political campaign signs outright for three quarters of

27   the year, the City bears a heavy burden to demonstrate this limitation is consistent with the

28   requirements of the First and Fourteenth Amendments.  With respect to the equal protection

**United States District Court**
For the Northern District of California

1   concerns raised by the 90-day limitation, the Court finds that City has presented no evidence that

2   justifies treating political campaign signs differently from other types of signs for all but 90 days

3   prior to the election.  Indeed, the fact that other types of signs are permitted year-round supports the

4   conclusion that the ordinance is not narrowly tailored to the City's interest in aesthetics.  Therefore,

5   the Court concludes that here, as in *City of Antioch*, the City's durational requirement violates the

6   equal protection clause of the Fourteenth Amendment.

7          The Court also concludes that the slightly longer time period in this case is not enough to

8   meet the City's burden of showing the Ordinance represents an appropriate balance between the

9   City's legitimate interest in aesthetics and the First Amendment right to freedom of speech.  While

10  the 90-day limit may be more reasonable than the 60-day limit in *City of Antioch*, the Court

11  nonetheless concludes that the reasoning in *City of Antioch* is applicable here as well.  The City has

12  not demonstrated that it could not have addressed its aesthetic concerns with less drastic, content-

13  neutral measures, such as the ones mentioned in *City of Antioch*.  Nor has the City presented any

14  evidence that political signs detract from the aesthetics of the City more than other signs that are

15  permitted to stand for longer periods.  *See Whitton v. City of Gladstone*, 54 F.3d 1400, 1409 (8th Cir.

16  1995) (striking down regulation limiting temporary political campaign signs to 30 days before the

17  election and noting that a requirement that all signs be removed or replaced after 90 days would

18  address the city's interest in aesthetics and likely pass constitutional muster because a candidate

19  could simply remove a sign one day and install another the next day).  Therefore, the Court

20  concludes that the provision is not narrowly tailored to the City's interest in aesthetics.

21         The 90-day limit is unconstitutional.  Enforcement of the 90-day limit is enjoined.

22  **III.      CONCLUSION**

23         For the reasons stated above, the Court concludes that City Code Sections 19.23.035(A)(1) is

24  unconstitutional.  Enforcement of this provision is enjoined.  However, this injunction is stayed for

25

26

27

28

180 days from the date of the Court's previous Findings of Fact and Conclusions of Law, filed

March 1, 2007, to allow the City Council to address the constitutional defects in Ordinance 2006-

004.  The Court retains jurisdiction to review any changes adopted by the City Council for

compliance with this Order and with the restrictions of the First and Fourteenth Amendments.

     IT IS SO ORDERED.

Date:  June 28, 2007

JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

21